# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

JOSEPH J. PEDICONE, III and )
HILMA L. PEDICONE, H/W, )
                                )
                 Plaintiffs, )
           v. )    C.A. No. N17C-11-264 WCC
                                  )
THOMPSON/CENTER ARMS )
COMPANY, LLC F/K/A )
THOMPSON/CENTER ARMS )
COMPANY, INC., and )
SMITH & WESSON CORP., )
                                  )

                   Defendants.


Submitted: December 16, 2021
Decided:  February 21, 2022

**Defendants' Motion for Summary Judgment – GRANTED in Part and DENIED in Part.**

## MEMORANDUM OPINION

Joseph J. Rhoades, Esquire and Stephen T. Morrow, Esquire, Rhoades & Morrow LLC, 1225 North King Street, Suite 1200, Wilmington, Delaware 19801. Michael A. Trunk, Esquire, and Thomas E. Bosworth, Esquire, Kline & Specter, P.C., 1525 Locust Street, Philadelphia, PA 19102. Attorneys for Plaintiffs.

Timothy Jay Houseal, Esquire and Jennifer M. Kinkus, Esquire, Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, DE 19801. Anthony M. Pisciotti, Esquire and Danny C. Lallis, Esquire, Pisciotti Lallis Erdreich, 30 Columbia Turnpike, Suite 205, Florham Park, New Jersey 07932. Attorneys for Defendants.

**CARPENTER, J.**

Before the Court is Defendants' Motion for Summary Judgment.  For the reasons set forth in this Opinion, Defendants' Motion is **GRANTED in part** and **DENIED in part**.

## I. STATEMENT OF FACTS

### A.  The Parties

Plaintiffs, Mr. Joseph J. Pedicone III ("Pedicone") and Mrs. Hilma L. Pedicone ("Mrs. Pedicone"), are residents of the State of Delaware.[1]  Pedicone is an avid hunter and firearm owner with approximately fifty years of hunting experience.[2] In 2016, Pedicone was loading his Thompson/Center Contender pistol ("Contender") in the front seat of his car, in preparation for an afternoon hunt, when it discharged and shot Pedicone in the leg, resulting in serious injury.[3] Mrs. Pedicone was not directly involved in the accident but brings derivative claims based on Pedicone's injury.[4]

Defendant Thompson/Center is a manufacturer of firearms and muzzleloading rifles.[5]  The subject Contender was manufactured on December 20, 1978 by K.W.

---

[1] Compl., D.I. 1, ¶¶ 1, 2 (Nov. 29, 2017).
[2] Pls.' Opp'n to Defs.' Mot. for Summ. J., D.I. 168, 3 (Nov. 1, 2021)(hereinafter "Pls.' Br.");
Defs. Opening Br. in Support of Defs.' Mot. for Summ. J., D.I.  155, 9 (Sept. 15,
2021)(hereinafter "Defs.' Br.").
[3] Defs.' Br. at 13-15.
[4] Compl. at ¶¶ 38-40, at p. 9.
[5] Defs.' Br. at 2.

Thompson Tool Company, Inc., which was then doing business as Thompson/Center.[6]

In 2008, Thompson/Center was acquired by Smith & Wesson Holding Corporation.[7] After the acquisition, a new corporation was formed, Thompson/Center Arms Company, and in 2012, Thompson/Center was merged into Thompson/Center LLC.[8] Thompson/Center LLC and Smith & Wesson Corporation are both subsidiaries of non-party Smith & Wesson Holding Corporation.[9]

## B. The Thompson/Center Contender

The Contender was designed in the 1960s and manufactured until approximately 2000.[10] The Contender's design incorporates several unique features, including (1) interchangeable barrels; (2) the ability to change the firing pin position; (3) the ability to manually adjust the trigger pull; and (4) adjustable length of travel of the trigger movement back and forward.[11]

The Contender also utilizes two safeties, an automatic and manual safety: (1) an automatic hammer block safety that pushes the hammer back and holds it away from the breech face, and (2) a manual "safety" position on the selector switch.[12]

---

[6] *Id.*
[7] *Id.* at 3.
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.* at 4.
[12] *Id.* at 4.

3

The automatic hammer block safety prevents an accidental discharge from a bump, drop, or accidental release of the hammer while cocking.[13] The manual safety, which is located on the hammer of the pistol, has three different positions, "rim fire," "center fire," and the "safe" position.[14]

The Contender is loaded by depressing that trigger guard spur and "breaking" the action to expose the breech of the barrel.[15] Once the breech is exposed, a cartridge may be inserted, and the action is closed.[16] Once closed, the shooter cocks the hammer, and then, changes the safety selector from "safe" to "rim fire" or "center fire" as appropriate for the cartridge being used.[17] If the user decides not to shoot but the gun is loaded and the hammer is cocked, there are additional steps to disarm the gun.[18] Specifically, the user must let the hammer down and re-set the automatic safety.[19]

The Contender is sold with an instruction manual ("Manual") that contains specific instructions and warnings, including detailed photographs and drawings depicting the mechanical operation of the gun.[20] The Manual is provided with new

---

[13] *Id*. at 4.
[14] *Id*.
[15] *Id*. at 6.
[16] *Id*.
[17] *Id*.
[18] *Id*.
[19] *Id*.
[20] *Id*.

purchases of the Contender and available on the manufacturer's website.[21] The Manual contains colorful fonts, bold type, and capitalization for important warnings.[22] For example, on the inside cover of the Manual, it states, "**YOU MUST READ THIS MATERIAL BEFORE USING THE CONTENDER**."[23]

### C. Pedicone purchased the used Contender from friend, Alan McDaniels

In 2008, Pedicone purchased the subject Contender from his friend Alan McDaniels ("McDaniels").[24] McDaniels is also a firearms enthusiast and has owned several Contenders.[25] McDaniels possessed the Manual but did not provide it to Pedicone.[26] Instead, McDaniels allegedly verbally informed Pedicone about the operation of the weapon.[27] Pedicone received a Bill of Sale that stated the subject Contender was being sold "as is" and without any express or implied warranties.[28] During the same transaction, Pedicone also purchased a used barrel from McDaniels.[29]

A few months later, in April of 2008, Pedicone changed the barrel of the subject Contender by sending it to Fox Ridge Outfitters, which was a

---

[21] *Id*. at 12.
[22] *Id*. at 8.
[23] *Id*.
[24] Pls.' Br. at 3.
[25] *Id*.
[26] *Id*.
[27] *Id*.
[28] Defs.' Br. at 10.
[29] *Id*.

Thompson/Center store.[30]  The barrel was cut to twelve inches and a muzzle brake was installed.[31]

### D.  The Pedicone Accident

 In January of 2016, Pedicone was preparing to go hunting with the subject Contender in the wooded area behind the Switch Salvage yard, located in New Castle, Delaware.[32]  Upon arrival, Pedicone had to wait approximately fifteen minutes for the yard to open so he could access his desired hunting location.[33]

While waiting for Swift Salvage to open, Pedicone grabbed the subject Contender from behind the seat, removed the unloaded gun from its case, and brought it up to the front console area.[34]  The selector switch was not on "safe" but was in the "center fire" position.[35]

Pedicone decided to handload ammunition while he was sitting in the driver's seat.[36]  When Pedicone closed the barrel, the gun discharged, and he was shot in the left leg.[37]  Pedicone suffered a major laceration of the left leg femoral artery and above-the-knee amputation of the left leg.[38]

---

[30] *Id*. at 12.
[31] *Id*.
[32] Pls.' Br. at 4, 13.
[33] *Id*. at 4.
[34] *Id*.
[35] Defs.' Br. at 14.
[36] *Id*.
[37] *Id*. at 15.
[38] Pls.' Br. at 5.

## II. PROCEDURAL BACKGROUND

On November 29, 2019, Plaintiffs initiated suit against Thompson/Center Arms and Smith & Wesson Corporation.[39] Pedicone asserts negligence claims based on design, manufacturing, and failure to warn defects, implied warranty violations, and Mrs. Pedicone asserted a loss of consortium claim.[40] Both Defendants have denied all allegations.[41] Extensive discovery ensued, and various expert witnesses have been deposed.

On September 15, 2021, Defendants file a Motion for Summary Judgment.[42] Plaintiffs responded opposing the Motion on November 1, 2021.[43] In doing so, Plaintiffs alerted the Court they will no longer be pursuing their manufacturing defect or implied warranty claims.[44] The remaining claims for adjudication are the negligent failure to warn and design defect claims and Mrs. Pedicone's loss of consortium claim.[45] Plaintiffs also seek punitive damages.[46]

On December 16, 2021, the Court held a hearing on the Motion and now, issues its decision.[47]

---

[39] Compl. at 1.

[40] *Id*. at 5-9.

[41] *See* Answ, of Def. Thompson Center Arms Co., LLC, D.I. 17 (Jan. 26, 2018); *See also* Answ. of Def. Smith & Wesson Corp., D.I. 18 (Jan. 26, 2018).

[42] Defs.' Mot. for Summ. J., D.I. 155, (Sept. 15, 2021)(hereinafter "Defs.' Mot.").

[43] Pls.' Br. at [unpaginated] 1.

[44] *Id*.

[45] *Id*.

[46] *Id*.

[47] Judicial Action Form for Mot. for Summ. J., D.I. 216, (Dec. 16, 2021).

## III. STANDARD OF REVIEW

In reviewing a motion for summary judgment pursuant to Superior Court Civil Rule 56, the Court must determine whether any genuine issues of material fact exist.[48] The moving party bears the burden of showing that there are no genuine issues of material fact, such that he or she is entitled to judgment as a matter of law.[49] In reviewing a motion for summary judgment, the Court must view all factual inferences in a light most favorable to the non-moving party.[50] Where it appears that there is a material fact in dispute or that further inquiry into the facts would be appropriate, summary judgment will not be granted.

Upon receipt of a motion for summary judgment, the Court may consider any submissions described in Rule 56(c), unless good reason has been given to do otherwise.[51] The Court may never, however, rely on evidence that would not be admissible at trial.[52] The Court may consider an expert's affidavit, but only if the affidavit is supported by a factual foundation and amounts to more than mere speculation or conjecture.[53] If the affidavit contains both admissible and

---

[48] Super. Ct. R. 56(c); See also *Wilmington Tru. Co. v. Aetna*, 690 A.2d 914, 916 (Del. 1996).
[49] *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979).
[50] *Merrill v. Crothall-Am., Inc.*, 606 A.2d 96, 99 (Del. Apr. 21, 1992).
[51] *Laugelle v. Bell Helicopter Textron, Inc.*, 88 A.3d 110, 117 (Del. Super. Ct. Feb. 27, 2014).
[52] *Id.*
[53] *Id.*

inadmissible material, the Court may consider only the admissible, while striking the remainder.[54]

## IV. DISCUSSION

### A. Negligence Claims

To recover for a negligence claim, Pedicone "must allege that defendant owed plaintiff a duty of care; defendant breached that duty; and defendant's breach was the proximate cause of plaintiff's injuries."[55]

A negligence claim based on failure to warn requires that a manufacturer owes a duty to warn the consumer directly concerning the risks associated with any product.[56] Likewise, a negligence claim based on a design defect requires a showing that "the design has created a risk of harm which is so probable that an ordinarily prudent person, acting as a manufacturer, would pursue a different available design which would substantially lessen the probability of harm."[57]

### 1. Failure to Warn

First, Defendants argue that Pedicone's negligence claim based on failure to warn must be dismissed as a matter of law because Pedicone admitted that he never read the Manual and, even if he did, the warnings were sufficient.[58] Defendants

---

[54] *Id.*
[55] *Boros v. Pfizer*, 2019 WL 1558576, at *3 (Del. Super. Ct. Mar. 25, 2019).
[56] *Barba v. Carlson*, 2014 WL 1678246, at *2 (Del. Super. Ct. Apr. 8, 2014).
[57] *Id.* at *4.
[58] Defs.' Br. at 23-5.

9

assert that Pedicone's failure to read the Manual breaks any causal chain between the Defendants and the accident.[59] Moreover, Defendants contend that the Manual contained specific instructions addressing the operation of the firearm, including photographs and drawings.[60]

Conversely, Pedicone argues that there is a genuine issue of material fact regarding the sufficiency of the warnings, and therefore, summary judgment is inappropriate.[61] Pedicone further asserts that proximate cause can be established because McDaniels, the seller of the subject Contender, provided instruction to Pedicone based on his reading of the Manual.[62]

Moreover, Pedicone argues that Defendants should have warned him of the defect when he serviced his firearm at Fox Ridge Outfitters, a subsidiary of Thompson/Center.[63] Pedicone cites to the Western District of Pennsylvania opinion, *Trask v. Olin Corp.*, to support his contention that in modern times, gun manufacturers can connect with their customers through various vehicles other than a manual.[64]

---

[59] *Id*. at 25.
[60] *Id*. at 26.
[61] Pls.' Br. at 15.
[62] *Id*. at 17.
[63] *Id*. at 19.
[64] Pls.' Br. at 19; *See also* 2016 WL 1255302, at *10 (W.D. Pa. 2016).

10

As a general rule, the manufacturer owes a duty to warn the consumer directly concerning the risks associated with any product.[65] This Court has previously addressed negligent failure to warn claims in both *Boros v. Pfizer, Inc.* and *Barba v. Carlson*.[66] Those cases, however, analyze failure to warn claims under the learned intermediary doctrine, which states that "a manufacturer of a prescription drug satisfies its duty to provide an appropriate warning about the drug when it gives the patient's physician the necessary information to be disseminated to the patient."[67]

The learned intermediary doctrine is inapplicable to this case but offers some guidance on the proximate cause prong under a failure to warn claim. The *Boros* Court explained, "[t]o establish proximate cause, a plaintiff must show that the defendant's negligent act or omission was the cause of the injury where the '[injury] would not have occurred but for' the negligent act or omission."[68]

Since Delaware Courts have only addressed this issue under the learned intermediary doctrine, the Court has looked to other jurisdictions, a majority of which find that failing to read instructions and warnings is dispositive and cannot support a negligence claim based on failure to warn.

---

[65] *Barba*, 2014 WL 1678246 at *2.
[66] *Id.*; 2019 WL 1558576.
[67] *Barba v. Boston Sci. Corp.*, 2015 WL 6336151, at *6 (Del. Super. Ct. Oct. 6, 2015).
[68] *Boros*, 2019 WL 1558576 at *3.

For example, the Eighth Circuit, in applying Minnesota law, explained that "[a]bsent a reading of the warning, there is no causal link between the alleged defect and the injury."[69] Moreover, "an issue as to the adequacy of a warning necessarily presupposes that the operator has read the warning."[70]

Similarly, the Tenth Circuit found that expert testimony regarding the inadequacy of a garage door owner's manual was irrelevant because the plaintiff admitted to never reading the manual, and therefore, the manual did not cause the injury.[71] Likewise, the Eastern District Court of Pennsylvania explained that where a plaintiff never reads the manual, the purported inadequacies of the warnings could not have caused the injury.[72]

In this case, it is undisputed that Thompson/Center supplied a Manual, which contained express warnings and instructions, with the Contender when it was sold. And, it is undisputed that Pedicone purchased the subject Contender second-hand from McDaniels but was never provided with nor read the Manual before operating the gun. Additionally, Pedicone admitted he did not read the Manual, made no effort to obtain a copy, and even confessed that when he buys used guns, he does not

---

[69] *Green Plains Otter Tail, LLC v. Pro-Envtl., Inc.*, 953 F.3d 541, 549 (8th Cir. 2020)(citing *J&W Enters., Inc. v. Econ. Sales, Inc.*, 486 N.W.2d 179, 181 (Minn. App. 1992)).
[70] *Id*. (citing *Johnson v. Niagara Mach. & Tool Works*, 666 F.2d 1223, 1225 (8th Cir. 1981)).
[71] *Smith v. Sears Roebuck and Co.*, 2007 WL 1252487, at *3-4 (10th Cir. 2007).
[72] *Wright v. Ryobi Tech., Inc.*, 175 F. Supp. 3d 439, at 455 (E.D. Pa. 2016).

attempt to read the manuals because, "[y]ou can look at them and tell they operate the same way."[73]

The Court finds the Plaintiff's argument could be compared to a drug dealer purchasing a handgun on the street without a manual and attempting to sue the manufacturer after the weapon discharges and he is injured. No reasonable person would find that the drug dealer has a legally sufficient basis to sue the gun manufacturer because his purchase did not include a manual nor would one believe the drug dealer would search the internet for instructions on the firearms use. While the experience of the Plaintiff and the uniqueness of this firearm provides a distinction to the drug dealer situation, it does not change the logical outcome. In fact, Plaintiff's situation is even less compelling.

Moreover, the Court finds the adequacy of the Manual is irrelevant. At bottom, Pedicone did not read the Manual and, therefore, is unable to connect its contents to his injury. Therefore, Pedicone's failure to read the Manual extinguishes his negligence claim based on a failure to warn because there is no causal link between the incident and any acts or omissions of Defendants with respect to their Manual. Accordingly, Defendants' Motion for Summary Judgment as to Plaintiffs' negligence failure to warn claim will be **GRANTED**.

---

[73] Defs.' Ex. P, D.I. 156, at 160-162 (Joseph J. Pedicone III Dep. Feb. 27, 2019).

## 2. Design Defect

Second, Defendants assert that Pedicone's design defect claim fails because there is no admissible evidence demonstrating a causal link between the alleged defect and the happening of the incident.[74] Defendants also contend that Plaintiffs' expert, Dr. Michael Knox, admitted that he cannot demonstrate that the alleged design defect caused the incident, making summary judgment appropriate.[75]

Plaintiffs, however, allege that there are numerous factual disputes in light of the evidence Plaintiffs have produced demonstrating the validity of the design defect claim and its causal link to the incident.[76] Plaintiffs further argue that Defendants are mischaracterizing Dr. Knox's testimony, and no such admission has been made.[77]

In this case, the parties present competing expert and witness testimony to support the design defect claim. Plaintiffs' expert, Dr. Knox, suggests that the Pedicone accident is possible based on his findings and testing.[78] While, Defendants' experts, Lucien Haag and Derek Watkins, opine that, based on their testing, the accident could not have occurred the way Pedicone explained but offer

---

[74] Defs.' Br. at 27.
[75] *Id*. at 28.
[76] Pls.' Br. at 22.
[77] *Id*.
[78] *See* Pls.' Ex. A, D.I. 168, at 72-74 (Michael Knox Report Sept. 30, 2021).

more likely scenarios.[79] The inconclusive evidence presents genuine issues of material fact regarding the possibility of the accident that are unresolvable on this motion.

Therefore, the Court concludes that the record is adequate to defeat Defendants' Motion for Summary Judgment as to Plaintiff's negligence design defect claim. Accordingly, Defendants' Motion for Summary Judgment as to Plaintiffs' negligence design defect claim is **DENIED**.

### B. Loss of Consortium

Third, Defendants contend that Mrs. Pedicone's claim must be dismissed because it is derivative of Pedicone's viable claims, of which, he has none.[80] Conversely, Plaintiffs agree the claim is derivative, but argue that it must survive because Pedicone's causes of action withstand this motion.[81]

It is well settled in Delaware that either a husband or wife has a cause of action for loss of consortium resulting from physical injury sustained by the other spouse due to the negligent acts of a third person.[82] Therefore, since Pedicone's underlying design defect claim remains, Mrs. Pedicone continues to have a valid loss of consortium claim that cannot be dismissed at this time.

---

[79] *See* Defs.' Ex. CC, D.I. 156, at 7 (Lucien Haag Report March 4, 2020); *See also* Defs.' Ex. FF, D.I. 156, at 5 (Derek Watkins Report Sept. 30, 2021).
[80] Defs.' Br. at 30.
[81] Pls.' Br. at 29.
[82] *Jones v. Elliott*, 551 A.2d 62, 63 (Del. 1988).

## C. Punitive Damages

Lastly, Defendants assert that Plaintiffs' request for punitive damages should be dismissed because there is a lack of evidence in the record to establish any legitimate basis for such damages.[83] Defendants argue that Pedicone purchased the subject Contender from a friend, used it without reviewing the manual, and did not attempt to acquire one, although readily available.[84] Conversely, Plaintiffs argue that Defendants have acted recklessly and outrageously, supporting their requested punitive damages award.[85] Plaintiffs cite to Dr. Knox's expert report and claim that it is foreseeable a defective firearm could cause catastrophic injury or death.[86]

Under Delaware law, punitive damages serve a dual purpose, first, to punish wrongdoers, and second, to deter others from similar conduct.[87] Punitive damages are appropriate in situations where defendant's conduct is particularly reprehensible, meaning reckless, motivated by malice, or fraud.[88] "[T]he imposition of punitive damages is sustainable for persistent distribution of an inherently dangerous product with knowledge of its injury-causing effect among the consuming public."[89] Moreover, "mere inadvertence, mistake, or errors of judgment which constitute mere

---

[83] Defs.' Br. at 31.
[84] *Id*. at 32
[85] Pls.' Br. at 31.
[86] *Id*. at 32.
[87] *Jardel Co., Inc. v. Hughes*, 523 A.2d 518, 529 (Del. 1987).
[88] *Id*.
[89] *Barba*, 2014 WL 1678246 at *6

16

negligence will not suffice…it is not enough that a decision be wrong. It must result from a conscious indifference to the decision's foreseeable effect."[90]

There are no contentions that Defendants' conduct was intentional or malicious. Instead, Plaintiffs' punitive damages argument rests entirely on Defendants' reckless and conscious indifference to foreseeable outcomes.[91] Recklessness requires the Court to consider the Defendants' act and their state of mind.[92] While claims for punitive damages are rarely either pursued or found appropriate in this jurisdiction, the decision by the Court whether to allow evidence related to punitive damages must wait until the evidence on the underlying substantive claim is completed. This will ensure a fair presentation of evidence on the design defect claim unimpeded by the potential prejudicial information regarding Defendant. The Court at the conclusion of the case will be in a better position to decide whether the evidence suggests a reckless conduct that would warrant punitive damages to be considered by the jury.

Accordingly, Defendant's Motion for Summary Judgment as to punitive damages is **DENIED**.

---

[90] *Id.*
[91] Pls.' Br. at 32.
[92] *Jardel,* 523 A.2d at 530.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is

**GRANTED in part** and **DENIED in part**.


### IT IS SO ORDERED.

/s/ William C. Carpenter, Jr.
Judge William C. Carpenter, Jr.