# United States Court of Appeals

### For the Eighth Circuit

_____

No. 20-3088

_____

Simon Osagi Iyawe; Alicia Nichole Iyawe

*Plaintiffs - Appellants*

v.

Merrick B. Garland, Attorney General of the United States; Alejandro Mayorkas, Secretary of the Department of Homeland Security; Tracy Renaud, Senior Official Performing the Duties of the Director, U.S. Citizenship and Immigration Services

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: October 21, 2021
Filed: March 11, 2022

_____

Before COLLOTON, SHEPHERD, and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

Alicia Nichole Iyawe filed a Form I-130 Petition for Alien Relative (I-130 petition) on behalf of her husband, Simon Osagi Iyawe.[1]  United States Citizenship and Immigration Services (USCIS) denied the petition because it concluded that Simon's first marriage, to Yolanda Kilpatrick, was fraudulently entered for the purpose of evading immigration laws.  After the Board of Immigration Appeals (BIA) dismissed the appeal, Simon and Alicia sought judicial review.  The district court[2] granted the government defendants' motion for summary judgment,[3] and, having jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

## I. Background

### A. Statutory Background

When an American citizen marries a noncitizen, the citizen can petition for lawful permanent residency for the spouse by filing an I-130 petition.  See 8 U.S.C. §§ 1151, 1154; 8 C.F.R. § 204.1(a)(1).  Once the I-130 petition is filed, USCIS conducts "an investigation of the facts" and adjudicates the petition.  8 U.S.C. § 1154(b).  If the I-130 petition is approved, the noncitizen spouse can then apply for permanent residency.  8 U.S.C. §§ 1255(a), 1186a.  However, the statute provides that:

> no petition shall be approved if (1) the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States or the

---

[1]We refer to Simon and Alicia Iyawe by their first names for clarity.

[2]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota, adopting the report and recommendation of the Honorable Becky R. Thorson, United States Magistrate Judge for the District of Minnesota.

[3]The Iyawes do not appeal the dismissal of their due process claim.

spouse of an alien lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws, or (2) the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws.

8 U.S.C. § 1154(c). This rule is mandatory and bars approval of an I-130 petition if the noncitizen previously sought immigration benefits through a fraudulent marriage or attempted or conspired to do so, even if the current marriage is bona fide or if the noncitizen was never prosecuted for the past conduct. See Zerezghi v. U.S. Citizenship & Immigr. Servs., 955 F.3d 802, 804–05 (9th Cir. 2020) (citing Matter of Tawfik, 20 I. & N. Dec. 166, 167 (BIA 1990)). The consequences of USCIS finding that a marriage was a sham are thus significant. See Osakwe v. Mukasey, 534 F.3d 977, 979 (8th Cir. 2008) ("It goes without saying that [USCIS's] determination of marriage fraud carries great consequences as an alien may be permanently ineligible to obtain an I-130 visa even if he subsequently enters into a bona fide marriage with a U.S. citizen.").

USCIS's decision to deny an I-130 petition pursuant to § 1154(c) must be based on "substantial and probative evidence" that there was an attempt or conspiracy to evade immigration laws through a fraudulent marriage. See 8 C.F.R. § 204.2(a)(1)(ii); see also Matter of Singh, 27 I. & N. Dec. 598, 607 & n.7 (BIA 2019) (explaining that this standard is higher than a preponderance of the evidence but less than clear and convincing evidence); Zerezghi, 955 F.3d at 815–16. In assessing an I-130 petition, USCIS uses "documents in its possession, interviews with the couple, and observations made during site visits." Zerezghi, 955 F.3d at 805. If USCIS finds substantial and probative evidence of marriage fraud, it typically issues a Notice of Intent to Deny (NOID) the petition, which sets forth the petition's shortcomings and directs the petitioner to respond with additional rebuttal evidence. 8 C.F.R. § 103.2(b)(8)(iii). At that point, the burden shifts to the petitioner to show

that the marriage was not fraudulent.  See Zerezghi, 955 F.3d at 805 (citing Matter of Kahy, 19 I. & N. Dec. 803, 806–07 (BIA 1988)); see also Singh, 27 I. & N. Dec. at 605.

## B. Factual Background

Simon is a Nigerian citizen who first entered the United States with a B2 visitor visa on August 11, 1985.  Simon married his first wife, Yolanda Kilpatrick, on September 15, 1986.  About a month later, on October 22, 1986, Kilpatrick filed an I-130 petition, and the Immigration and Naturalization Service (INS)[4] interviewed the couple in February 1987.  The INS officer noted discrepancies in their separate testimonies, such as who attended their wedding[5] and that the address where they said they were living did not match Kilpatrick's car registration.  Then, in 1988, Kilpatrick signed a sworn affidavit in the presence of INS officers (the 1988 Statement) in which she stated that, in exchange for marrying Simon, she received a $300 payment, a $117 stereo, and a $59 bicycle.  Kilpatrick also stated, among other things, that she saw Simon pay a woman named Marie $200 for "finding" her, she never lived with Simon, Simon said he would pay her additional money after the interview but never did, and she was to marry Simon so he could get a green card.  The same day that she signed the affidavit, Kilpatrick withdrew the I-130 petition.  In the fall of 1988, the INS charged Simon with overstaying his visa and initiated removal proceedings.  Simon was subsequently released on bond.

---

[4]The INS handled I-130 petitions prior to 2003, when it ceased to exist and its functions were transferred to the Department of Homeland Security.  See Abdelwahab v. Frazier, 578 F.3d 817, 819 n.2 (8th Cir. 2009).

[5]Simon stated that the couple's wedding had been attended by both Kilpatrick's aunt and Simon's friend Pride Osa, whereas Kilpatrick stated that only Osa had attended the ceremony.  At the time, the INS was investigating fraudulent marriages involving Nigerian nationals in the Nashville area, including a person named Pride Osa.

On January 31, 1989, Kilpatrick filed a second I-130 petition on Simon's behalf. Two years later, the INS issued an NOID based on its determination that Simon and Kilpatrick's marriage was fraudulent. Kilpatrick responded with a short signed letter stating that she "love[s] [her] husband," she made the 1988 Statement "due to the tension in [her] marriage at the time," her "husband never promise[d] to pay [her] before [they] got married," and she was ready to answer any questions. The INS made multiple attempts to interview Kilpatrick and Simon, but both failed to participate. The INS denied the second I-130 petition on April 23, 1991, and Kilpatrick did not appeal.

Instead, on June 28, 1991, Kilpatrick filed a third I-130 petition, this time with a different INS office—one in Nebraska. This petition was granted. Based on the newly granted petition, Simon again sought adjustment of status. As part of the proceedings, Kilpatrick submitted an affidavit—undated and not notarized—in which she stated that the "INS people . . . came and scared [her] into not helping Simon," and "Simon never paid [her] money to get married." However, despite receiving a subpoena from an Immigration Judge, Kilpatrick failed to appear as a witness at the proceedings. On March 15, 1993, the INS issued a Notice of Intent to Revoke (NOIR) the third I-130 petition. On June 16, 1993, Kilpatrick and Simon divorced, and a month later, the INS officially revoked the third I-130 petition.

On June 13, 1998, Simon married Joyce Isoken Nehikhare, with whom he has two children. Nehikhare filed an I-130 petition on Simon's behalf in December 2000. Simon and Nehikhare were both interviewed, and Simon submitted an additional written statement about his prior marriage to Kilpatrick. On July 11, 2001, the INS issued an NOID for this fourth I-130 petition. The INS found Simon's current relationship credible, but continued to have concerns about the Kilpatrick marriage.

In response, Simon submitted an affidavit saying that he "really thought [his] marriage [to Kilpatrick] would work out," and Kilpatrick submitted a notarized, handwritten letter saying that she married Simon because she loved him and wanted to be with him. She explained that she lied in the 1988 Statement because she was angry with Simon and the INS officers "pressured [her] to say [their] marriage was not real" and that parts of the 1988 Statement were fabricated.

The INS issued a second NOID, stating the couple's responses did not overcome the substantial and probative evidence that Simon's marriage to Kilpatrick was fraudulent. The fourth I-130 petition was denied on May 30, 2003, Nehikhare's appeal was dismissed in 2005, and the couple later divorced in 2008.

On June 29, 2012, Simon married Alicia, with whom he has three children. Alicia filed an I-130 petition on Simon's behalf on August 5, 2013. The following year, USCIS officers interviewed Alicia and Simon and, citing § 1154(c), issued an NOID based on Simon's prior marriage to Kilpatrick. Alicia submitted a response in December 2014, but USCIS denied the petition in early 2015. USCIS found substantial and probative evidence that Simon attempted to obtain an immigration benefit by entering a sham marriage, including: Kilpatrick's 1988 Statement, which she had never recanted under oath; the specificity of the 1988 Statement; Kilpatrick's past involvement in criminal activity; inconsistencies in the evidence for the multiple I-130 petitions filed on Simon's behalf by Kilpatrick and Nehikhare; Kilpatrick's failure to list Simon as her husband when she applied for public benefits during their marriage; a lack of evidence indicating that Kilpatrick and Simon ever lived together during their marriage; and the fact that individuals Kilpatrick named in her 1988 Statement—and later stated she made up—were real people linked to marriage fraud investigations.

Alicia appealed USCIS's denial, and the BIA dismissed the appeal in August 2018, finding no error in USCIS's decision to credit the 1988 Statement over Kilpatrick's subsequent statements and finding that the 1988 Statement constituted substantial and probative evidence of marriage fraud. The BIA noted that, after Kilpatrick's 1988 Statement and later recantations, officers repeatedly sought clarification from her through sworn testimony but she failed to provide it.

Simon and Alicia then sought review in federal court. They argued to the district court—as they do now on appeal—that the government defendants violated the Immigration and Nationality Act and the Administrative Procedure Act (APA) by improperly denying Alicia's I-130 petition. The parties filed cross-motions for summary judgment and, in a report and recommendation, the magistrate judge recommended granting the government's motion. The Iyawes filed no objections, and the district court adopted the recommendation and dismissed the Iyawes' amended complaint.

## II. Discussion

We review a district court's grant of summary judgment de novo. Green Plains Otter Tail, LLC v. Pro-Env't, Inc., 953 F.3d 541, 545 (8th Cir. 2020). "Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." Id. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting Ricci v. DeStefano, 557 U.S. 557, 586 (2009)).

Our review of the BIA's final decision to impose a marriage-fraud penalty is governed by the APA. See Zerezghi, 955 F.3d at 807. We will not set aside the agency's decision unless it is "arbitrary, capricious, an abuse of discretion, or

otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); <u>Mercier v. U.S. Dep't of Lab., Admin. Rev. Bd.</u>, 850 F.3d 382, 388 (8th Cir. 2017). This is a highly deferential standard of review, and its scope is narrow. <u>See</u> <u>Sierra Club v. Env't Prot. Agency</u>, 252 F.3d 943, 947 (8th Cir. 2001). We must not substitute our judgment for that of the agency but must determine if the agency made a "clear error of judgment." <u>See</u> <u>Judulang v. Holder</u>, 565 U.S. 42, 52–53 (2011).

The Iyawes argue that the denial of Alicia's I-130 petition was arbitrary, capricious, and an abuse of discretion because it was not based on "substantial and probative evidence," <u>see</u> 8 C.F.R. § 204.2(a)(1)(ii), and because USCIS and the BIA did not consider the entire record. However, as detailed above, the record before the agency was lengthy and extensive, and all of it was considered anew for Alicia's petition.[6] True, the Iyawes point to some evidence favorable to their position, but much of the record casts doubt on the legitimacy of the marriage between Simon and Kilpatrick. Of particular significance is Kilpatrick's signed statement that she was paid to marry Simon, admitting that the marriage was a sham. This is "direct evidence of fraud." <u>See</u> <u>Singh</u>, 27 I. & N. Dec. at 607.

---

[6]The Iyawes also argue that the four previous denials were not based on substantial evidence and that those denials continue to prejudice Simon. But the focus of this appeal is the denial of Alicia's petition, which—as we explain above—was based on "substantial and probative evidence" in the entire record, not on the mere fact that the earlier applications had been denied. As USCIS recognized, in making a fraudulent marriage determination, "the district director should not give conclusive effect to determinations made in a prior proceeding, but, rather, should reach his own independent conclusion based on the evidence before him." <u>See</u> <u>Tawfik</u>, 20 I. & N. Dec. at 168. But the director "may rely on any relevant evidence, including evidence having its origin in prior Service proceedings involving the beneficiary." <u>Id.</u>

The Iyawes counter that USCIS gave too much weight to the 1988 Statement and too little weight to Kilpatrick's assertion that she made that statement under duress; and they say USCIS ignored the fact that the couple remained married for several years after 1988. They also criticize USCIS's conclusion that the specificity in the 1988 Statement rendered it more credible than the general statements in Kilpatrick's later recantations, asserting that her earlier "random" detailed responses should have been a clue to the officer that she felt pressure to provide information where it did not exist.

These arguments are unavailing. First, even if the 1988 Statement was the primary evidence considered in connection with the earlier petitions, for this fifth petition, USCIS and the BIA considered many additional pieces of evidence to determine that Simon's first marriage was fraudulent. Second, the record shows USCIS gave adequate consideration to Kilpatrick's claim of duress, expressly determining that her "general claim of duress is insufficient to retract her detailed admissions as to the fraudulent nature of her marriage to Simon." Third, we disagree that it was arbitrary and capricious for USCIS and the BIA to conclude that the detailed 1988 Statement was more credible than Kilpatrick's subsequent statements. Kilpatrick never appeared in person to recant her 1988 Statement under oath, despite multiple opportunities to do so, and her subsequent statements were vague and often not sworn or notarized. Moreover, Kilpatrick's assertion that she made up parts of her 1988 Statement was undermined by the fact that some of the people she identified in it were known to USCIS as real people linked to other fraudulent marriage investigations. USCIS and the BIA reasonably gave more weight to the 1988 Statement, particularly in light of other facts in the record that similarly cast doubt on the validity of the Simon-Kilpatrick marriage. See Sabhari v. Reno, 197 F.3d 938, 944 (8th Cir. 1999) (concluding that recantations of prior statements suggesting marriage fraud rang hollow because there was additional evidence in the record before the BIA supporting a finding of fraud). We discern no "clear error of

-9-

judgment" in the BIA's final determination that there was substantial and probative evidence of marriage fraud.[7]

## III. Conclusion

We affirm the judgment of the district court.

_____

[7]The Iyawes assert that the district court erred in not separately addressing their argument that the BIA abused its discretion in denying the petition. But the Iyawes' arguments that the BIA abused its discretion are the same ones they offer to say the denial was arbitrary and capricious. For the same reasons the denial of the petition was not arbitrary and capricious, it was also not an abuse of discretion.