## Matter of Zihao JIN, Beneficiary of a visa petition filed by Hanfei Xiong, Petitioner

*Decided February 13, 2026*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

Based on the petitioner's extensive allegations and evidence of marriage fraud regarding the approved visa petition, the record is returned to United States Citizenship and Immigration Services to further consider the visa petition and take action as warranted in this matter.

FOR THE PETITIONER: Cody M. Brown, Esquire, Troup, Texas

FOR THE DEPARTMENT OF HOMELAND SECURITY: Kyle Davis, Deputy Chief Counsel

BEFORE: Board Panel: MALPHRUS, Chief Appellate Immigration Judge; GALLOW and MONTANTE, Appellate Immigration Judges.

MALPHRUS, Chief Appellate Immigration Judge:

The petitioner appeals from the May 23, 2023, decision of United States Citizenship and Immigration Services ("USCIS") granting the Petition for Alien Relative (Form I-130) she filed on behalf of the beneficiary to accord him status as the spouse of a United States citizen pursuant to section 201(b)(2)(A)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1151(b)(2)(A)(i) (2018). The petitioner argues that she has discovered new evidence that the beneficiary engaged in marriage fraud and requests that the Board deny the previously approved visa petition. The Department of Homeland Security ("DHS") responded to the appeal. The record will be returned to USCIS for further proceedings.[1]

## I. FACTS

The United States citizen petitioner married her husband, a native and citizen of China, on March 3, 2022. On May 31, 2022, the petitioner filed a visa petition on his behalf with supporting documentation. As evidence of

---

[1] We generally do not accept an untimely appeal on certification. However, given the need to address the significant issue raised regarding marriage fraud in this particular case, we will exercise our discretionary authority to accept the appeal on certification. *See* 8 C.F.R. § 1003.1(c) (2026).

the bona fides of her marriage, the petitioner submitted a joint lease agreement, joint checking account document, joint dental insurance, joint auto insurance, joint Airbnb confirmations, and photographs of the couple. USCIS approved the visa petition on May 23, 2023, along with the beneficiary's Application to Register Permanent Residence and Adjust Status (Form I-485), and the beneficiary became a conditional permanent resident.[2]  According to the petitioner, she and the beneficiary formally separated in December 2023.  In February 2024, the petitioner filed a petition for annulment of her marriage based on fraud.  On July 15, 2025, she filed the instant appeal seeking denial of the previously approved visa petition.

With her appeal, the petitioner has submitted hundreds of pages of evidence to support her assertion that the beneficiary fraudulently induced her to marry him, and thus their marriage was invalid.  The submitted evidence includes 19 detailed affidavits, a petition for annulment based on marriage fraud with the beneficiary's related deposition transcript, police reports, and medical records, among other documents.  The petitioner asserts that the beneficiary married her to gain an immigration benefit and did not intend to enter a bona fide marriage.  Thus, she claims she was the victim of one-sided marriage fraud, which she discovered after the visa petition was granted.  The petitioner argues that the visa petition approved on May 23, 2023, should now be denied.  The Board reviews all questions arising in appeals from decisions of USCIS officers de novo.  8 C.F.R. § 1003.1(d)(3)(iii) (2026).

## II.  LEGAL BACKGROUND

Marriage fraud has been a long-standing problem for many decades and remains a serious issue in the immigration context.  *See, e.g.*, *Iyawe v. Garland*, 28 F.4th 875, 881–82 (8th Cir. 2022) (upholding a conclusion that there was substantial and probative evidence that the alien entered into a fraudulent marriage in the late 1980s); *United States v. Lozano*, 511 F.2d 1 (7th Cir. 1975) (upholding convictions arising out of a scheme to arrange a fraudulent marriage); H.R. Rep. No. 99-906, at 6 (1986) (citing a survey revealing that approximately 30 percent of all petitions for immigrant visas involve suspect marital relationships).  Several published circuit court decisions in recent years involve widespread marriage fraud conspiracies. *See, e.g.*, *United States v. Murry*, 31 F.4th 1274 (10th Cir. 2022) (involving

---

[2]  We note that by this time the petitioner and beneficiary had a child together, who was born in January 2023.  However, the petitioner asserts the beneficiary effectively abandoned her during the pregnancy and has never significantly provided for their child.

individuals convicted of conspiracy to commit marriage fraud for their actions spanning over 7 years); *United States v. Daniel*, 933 F.3d 370, 377–78 (5th Cir. 2019) (affirming defendants' numerous convictions related to their involvement in a marriage fraud conspiracy involving 10 to 15 sham marriages); *United States v. Ongaga*, 820 F.3d 152, 158–59 (5th Cir. 2016) (affirming the conspiracy conviction of individuals involved in facilitating sham marriages involving Kenyan nationals).  The Board routinely reviews appeals where a visa petition has been denied due to a finding of marriage fraud through our adjudications and published decisions.  *See Matter of Pak*, 28 I&N Dec. 113 (BIA 2020) (discussing the standard for denying a visa petition based on prior marriage fraud under section 204(c) of the INA, 8 U.S.C. § 1154(c) (2018)); *Matter of R. I. Ortega*, 28 I&N Dec. 9 (BIA 2020) (same); *Matter of P. Singh*, 27 I&N Dec. 598 (BIA 2019) (same); *Matter of Tawfik*, 20 I&N Dec. 166 (BIA 1990) (same); *see also Matter of Mensah*, 28 I&N Dec. 288, 296 (BIA 2021) (concluding that false statements about a prior marriage can render an alien inadmissible for willfully misrepresenting a material fact to obtain an immigration benefit).

When a petitioner files a visa petition on his or her spouse's behalf with USCIS, the petitioner must show by a preponderance of the evidence that the marriage was legally valid and bona fide at its inception and not entered for the purpose of evading the immigration laws.  *See Matter of Laureano*, 19 I&N Dec. 1, 2–3 (BIA 1983); *see also Matter of Rehman*, 27 I&N Dec. 124, 125 (BIA 2017) ("In visa petition proceedings, the petitioner bears the burden of establishing the claimed relationship by a preponderance of the evidence.").  Key to this inquiry is "determining the parties' intent at the time of their marriage."  *Matter of McKee*, 17 I&N Dec. 332, 334 (BIA 1980).

USCIS has several avenues available to it to detect potential marriage fraud.  First, USCIS can require significant documentary evidence and require the parties to attend in-person interviews at which they are questioned regarding details of their lives and relationship.  *See* 8 C.F.R. §§ 103.2(b)(9), 204.1(f), 204.2(a)(1)(iii)(B), (2) (2026).  We recognize that USCIS has frequently waived such interviews in recent years and did so in this instance.  The petitioner raises valid concerns about this practice.  It appears that USCIS is now attempting to tighten the vetting of family-based immigrant visa petitions by issuing new guidance.[3]  USCIS has updated its Policy Manual to provide that in many specified instances, a marital

---

[3]  For example, on October 17, 2025, USCIS announced new guidance to "enhance USCIS' capabilities to identify marriage-based fraud in the initial stages of the immigration process."  USCIS, Policy Alert 2025-23, Family-Based Immigration: Spousal Petitions (2025).

interview is mandatory, including where evidence is missing, inconsistencies are noted, or there is any indication in the record that the marriage is not bona fide. *See* USCIS, Policy Manual, Vol. 6, Pt. B, Ch. 5(B) (Feb. 3, 2026); *see also* USCIS, Policy Alert 2025-12, Family-Based Immigrants (2025) (announcing new guidance on "eligibility and adjudication requirements, including when USCIS requires an interview for family-based immigrant visa petitions").

If an adjudicator discovers an indication of fraud in the interview or when reviewing the evidence, USCIS policy currently provides that the case be referred to the Fraud Detection and National Security ("FDNS") Directorate within USCIS.[4] *See, e.g.*, *Mestanek v. Jaddou*, 93 F.4th 164, 167–68 (4th Cir. 2024). The FDNS can conduct site visits at an alien's home and workplace, interview individuals associated with the alien, and obtain subpoenas for documents. *See id.* at 167–69, 71–72. Some visa petitions are denied at the initial adjudication stage by USCIS upon a finding of marriage fraud.[5]

In deciding appeals of visa petitions denied based on marriage fraud, the Board considers the parties' arguments and the evidence submitted below by the petitioner and DHS. As an appellate body, we are not in a position to hold evidentiary hearings, review new evidence, or conduct additional fact-finding. *See Matter of Fedorenko*, 19 I&N Dec. 57, 74 (BIA 1984) ("The Board is an appellate body whose function is to review, not to create, a record."); 8 C.F.R. § 1003.1(d)(3)(iv). In cases where marriage fraud was found, the record will frequently include an FDNS report. *See, e.g.*,

---

[4]  The FDNS is tasked with detecting, deterring, and investigating immigration-related fraud, including marriage fraud. *See Mestanek*, 93 F.4th at 171; USCIS, Fraud Detection and National Security Directorate (FDNS) (May 2022), https://www.uscis.gov/sites/default/files/document/brochures/FDNS_Brochure_Web_V2_508.pdf.

[5]  Indeed, under some circumstances a visa petition is subject to a *presumption* of fraud. For example, pursuant to section 204(a)(2)(A) of the INA, 8 U.S.C. § 1154(a)(2)(A) (2024), a lawful permanent resident who obtained that status through marriage and who submits a petition for an alien based on a second marriage within 5 years of acquiring permanent residence is subject to the presumption of fraud. *See Matter of Patel*, 19 I&N Dec. 774, 783 (BIA 1988). Additionally, where a marriage occurs during the pendency of removal proceedings, fraud is presumed. *See* INA §§ 204(g), 245(e), 8 U.S.C. §§ 1154(g), 1255(e) (2024). To rebut the presumption of fraud in such cases, the petitioner (or the respondent in removal proceedings) bears the burden of establishing by clear and convincing evidence that the marriage presumed to be fraudulent was entered into in good faith and not for purposes of evading the immigration laws. *See* INA §§ 204(a)(2)(A), 245(e)(3), 8 U.S.C. §§ 1154(a)(2)(A), 1255(e)(3).

*Matter of P. Singh*, 27 I&N Dec. at 609–11 (evaluating the findings set forth by FDNS officers in their report and noting that "[d]etailed reports from on-site visits and field investigations are especially important pieces of evidence that may reveal the presence of fraud"); *see also Matter of Pak*, 28 I&N Dec. at 118–19 (relying on evidence gathered from a USCIS investigation to affirm the Director's marriage fraud determination).

Even where USCIS approves a visa petition, the INA and regulations provide a mechanism to subsequently prevent an alien from obtaining lawful status based on a sham marriage. USCIS may revoke an approved visa petition for good and sufficient cause.[6] *See* INA § 205, 8 U.S.C. § 1155 (2024); 8 C.F.R. § 205.2 (2026) (setting forth the procedures for revocation of an approved visa petition); *see also Matter of Estime*, 19 I&N Dec. 450, 451–52 (BIA 1987) (discussing the "good and sufficient cause" standard). In proceedings to revoke the approval of a visa petition, the burden remains with the petitioner to establish eligibility for the visa. *See Matter of Cheung*, 12 I&N Dec. 715, 719 (BIA 1968). Where the bona fides of a marriage are challenged, the petitioner must present documentary or testimonial evidence to show that it was not entered into for the primary purpose of evading the immigration laws. *See Matter of Phillis*, 15 I&N Dec. 385, 386 (BIA 1975).

After an alien obtains legal status, there are several avenues by which DHS can seek to rescind, revoke, or remove the alien's status after marriage fraud is discovered. The INA's requirement that lawful permanent resident status be conditional for certain aliens who obtain status through marriage is aimed at protecting against fraudulent marriages. *See* INA § 216(a)(1), (h)(1), 8 U.S.C. § 1186a(a)(1), (h)(1) (2024) (providing that an alien who obtains status based on a marriage entered into less than 24 months before obtaining status is accorded conditional permanent resident status); *see also Eleri v. Sessions*, 852 F.3d 879, 881 (9th Cir. 2017) (stating that the 2-year requirement for conditional residency "strikes at the fraudulent marriage by the simple passage of time [because] it is difficult to sustain the appearance of a *bona fide* marriage over a long period" (alteration in original) (quoting H.R. Rep. No. 99-906, at 9–10 (1986)). If the Secretary of DHS determines, before the second anniversary of an alien obtaining conditional permanent resident status, that the qualifying marriage was entered into for the purpose of procuring an alien's admission as an immigrant or it has been judicially annulled or terminated, then the Secretary of DHS shall notify the parties and

---

[6]  It is unclear from our record whether the petitioner in this case filed a motion to reopen requesting that USCIS revoke the visa petition.

terminate the alien's conditional permanent resident status. INA § 216(b)(1), 8 U.S.C. § 1186a(b)(1).

Fraudulent marriages can also be identified in the process of removing the conditions on permanent residence. To remove the conditions on lawful permanent resident status, the alien must file a Petition to Remove Conditions on Residence (Form I-751).[7] *See* 8 C.F.R. § 216.4(a)(1) (2026); 6 USCIS Policy Manual, pt. I, ch. 3 (Feb. 3. 2026), https://www.uscis.gov /book/export/html/68600?redact=1. This must be filed within the 90-day period before the second anniversary of the alien's conditional permanent resident status. 8 C.F.R. § 216.4(a)(1); 6 USCIS Policy Manual, pt. I, ch. 3(C)(1). Normally, such a petition must be jointly filed by the petitioner and the beneficiary, must include documentary evidence, and may require an interview at a USCIS field office. *See* 8 C.F.R. § 216.4(a)(1), (5), (b); 6 USCIS Policy Manual, pt. I, ch. 2(A), 3(A), (B), (C)(1), (G). Where a petitioner does not wish to file the joint petition, the alien must request a waiver of the joint filing requirement. 8 C.F.R. § 216.4(a)(1). The alien then bears the burden of proof to establish, among other elements, that he or she entered his or her marriage in good faith. *See* INA § 216(c)(4)(B), 8 U.S.C. § 1186a(c)(4)(B); 8 C.F.R. 216.5(a)(1)(ii) (2026); 6 USCIS Policy Manual, pt. I, ch. 5.

When an alien fails to file a Form I-751 or it is denied, the regulations provide for USCIS to issue a notice to appear placing the alien in removal proceedings before an Immigration Judge. *See* 8 C.F.R. § 216.4(a)(6), (d)(2); 6 USCIS Policy Manual, pt. I, ch. 2(D)(2), Ch. 6(C). While previously USCIS often may not have placed such aliens in proceedings, USCIS policy was recently amended to require that a notice to appear be issued "in cases presenting substantiated fraud or material misrepresentation." USCIS, Policy Memorandum 602-0187, Issuance of Notices to Appear (NTAs) in Cases Involving Inadmissible and Deportable Aliens (2025).

The INA and the regulations also provide that even after an alien adjusts status, such status may be rescinded within 5 years if the alien was not, in fact, eligible for adjustment of status. *See* INA § 246(a), 8 U.S.C. § 1256(a) (2024); 8 C.F.R. §§ 246.1, 1246.1 (2026). If DHS personally serves an alien with a notice of intent to rescind, the alien has 30 days to submit a sworn answer in writing denying the allegations and/or requesting a hearing before an Immigration Judge. *See* 8 C.F.R. §§ 246.1, 1246.1; 7 USCIS Policy

---

[7]  The record does not reflect whether the beneficiary has filed a Form I-751.

Manual, pt. Q, ch. 5(A).  If the alien does so in a timely manner, a rescission hearing is held.  *See* 8 C.F.R. §§ 246.3, 246.5, 1246.3, 1246.5 (2026).

Although most mechanisms for addressing marriage fraud arise in the context of proceedings before USCIS, Immigration Courts and the Board also address marriage fraud issues in removal proceedings.  A lawful permanent resident may be placed in removal proceedings based on a charge of marriage fraud pursuant to section 237(a)(1)(G) of the INA, 8 U.S.C. § 1227(a)(1)(G) (2024).  An alien may also be placed in removal proceedings after the denial of his or her Form I-751.  *See* 8 C.F.R. § 216.4(d)(2).  That respondent may request that an Immigration Judge review USCIS' denial of his or her application for a waiver of the joint filing requirement to remove the conditions on his or her residency.  *See Matter of H. N. Ferreira*, 28 I&N Dec. 765, 768 (BIA 2022); *Matter of Mendes*, 20 I&N Dec. 833, 836 (BIA 1994); 8 C.F.R. § 216.5.  The Immigration Judge can then conduct an evidentiary hearing regarding the validity of the marriage.  The respondent may testify, bring witnesses to provide testimony, and submit documentary evidence in an attempt to establish the bona fides of the marriage.  *See e.g. Matter of Bador*, 28 I&N Dec. 638, 639 (BIA 2022) (noting that the alien testified regarding his prior marriage and addressed evidence DHS provided from a field investigation), *aff'd*, 107 F.4th 75 (2d Cir. 2024); *Matter of Herrera Del Orden*, 25 I&N Dec. 589, 595 (BIA 2011) (holding that while reviewing the denial of a waiver of the joint filing requirement to remove the conditions on residence, "the alien may introduce, and the Immigration Judge should consider, material and relevant evidence without regard to whether it was previously submitted or considered in proceedings before the DHS").

The Immigration Court may also address evidence of marriage fraud in the context of an alien applying for adjustment of status.  In *Matter of Kagumbas*, 28 I&N Dec. 400, 403–06 (BIA 2021), we held that the Immigration Judge has the authority to deny adjustment of status, even where a respondent has an *approved* I-130 visa petition, if the respondent has not shown that the marriage underlying the visa petition is bona fide.  In that case, the Immigration Judge determined that the respondent and his witnesses provided testimony at the merits hearing that was extremely inconsistent and not credible.  *Matter of Kagumbas*, 28 I&N Dec. at 402–03.  She therefore determined that the respondent had entered into a fraudulent marriage, despite the approved visa petition, and found him statutorily ineligible for adjustment of status.  *Id*. at 403.

Regardless of whether a finding of marriage fraud is made by USCIS or the Immigration Court, such a finding has consequences for the alien's ability to obtain status in the future.  Section 204(c) of the INA, 8 U.S.C. § 1154(c)

(2024), mandates the denial of subsequent visa petitions where the alien has entered, attempted to enter, or conspired to enter a fraudulent marriage. *See, e.g.*, *Mestanek*, 93 F.4th at 167.  The statute provides, in pertinent part:

> [N]o petition shall be approved if (1) the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States or the spouse of an alien lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws, or (2) the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws.

INA § 204(c), 8 U.S.C. § 1154(c).

The foregoing procedures exist to prevent and address marriage fraud at various stages of adjudication and in different contexts.  In each of these scenarios in Immigration Court, the Immigration Judge enters a decision containing factual findings and legal analysis, over which the Board would subsequently have appellate review.  Thus, there are multiple potential ways in which the beneficiary's case could eventually come before us on appeal.

While these avenues to uncover marriage fraud exist, this does not mean they are adequately utilized by DHS.  As noted earlier, marriage fraud has been a serious problem in the immigration system for many decades and remains a serious issue today.  *See* H.R. Rep. No. 99-906, at 6; *see also Daniel*, 933 F.3d at 377–78 (affirming recent convictions for crimes related to involvement in a marriage fraud conspiracy).  The petitioner makes strong policy arguments that USCIS does not devote adequate attention and resources to uncovering and addressing marriage fraud.  However, the Board cannot direct USCIS or supplant its role in the system.

## III.  ANALYSIS

The petitioner asserts that this Board has jurisdiction over her appeal from the prior approval of the visa petition.  The petitioner argues that based on new evidence she submits on appeal, the Board should deny outright the previously approved visa petition.  She points to 8 C.F.R. § 1003.1(d)(3)(iii), which provides that "[t]he Board may review de novo all questions arising in appeals from decisions issued by DHS officers."  The petitioner argues that pursuant to this regulation, we have unqualified authority to review all factual and legal issues, and this necessarily encompasses our ability to determine whether a visa petition was approved despite the existence of marriage fraud.  Although DHS opposes the appeal, it has not responded to

the petitioner's argument regarding this issue and alternatively requests we return the record to USCIS for further review.

Given our role as an appellate body, a return of the record to USCIS for further review is the appropriate course of action.[8] *See Matter of Fedorenko*, 19 I&N Dec. at 74; *cf. Matter of Obaigbena*, 19 I&N Dec. 533 (BIA 1988) (noting that the Board's review is limited to the record of proceeding before the Director). The regulation at 8 C.F.R. § 1003.1(d)(3)(iv) provides that "[t]he Board will not engage in factfinding in the course of deciding cases." The Board does not hold evidentiary hearings or conduct investigations. We have no mechanism or resources to investigate and resolve disputed factual allegations, which may warrant, for example, interviewing the parties or other witnesses. Thus, we may deem the submission of new evidence a motion to remand or otherwise remand to DHS if we consider further fact-finding is necessary. *See* 8 C.F.R. § 1003.1(d)(3)(iv).

We recognize that in this matter, we do not have the beneficiary's response to the petitioner's allegations. Because beneficiaries are not a party to visa petition appeals before the Board, they are not served with notice of an appeal and there is no mechanism for them to respond to allegations. Thus, the beneficiary has not had notice or an opportunity to be heard. If the beneficiary is found to have engaged in marriage fraud, any future visa petition filed on his behalf, whether filed by another family member or an employer, will be subject to the permanent bar under section 204(c) of the INA, 8 U.S.C. § 1154(c). While the petitioner claims that USCIS frequently grants waivers in these situations, the statute does not provide any waiver for a section 204(c) finding.

Based on the petitioner's extensive allegations and evidence of marriage fraud regarding the approved visa petition, the record is returned to USCIS to further consider the visa petition and take action as warranted in this matter. USCIS is the proper forum for an evaluation of the extensive factual allegations and documentary evidence the petitioner has submitted. USCIS, not the Board, has the ability and resources to further investigate the claimed fraud. *See Mestanek*, 93 F.4th at 171–72. Additionally, USCIS can inform the beneficiary of the petitioner's allegations and provide him with an opportunity to respond. DHS counsel indicated on appeal that upon return of the record, USCIS will review the record, including the evidence

---

[8]   In light of DHS' request for remand, we decline to reach the issue of whether we would have jurisdiction over a timely appeal of an approved visa petition.

submitted on appeal, and decide whether revocation of the visa petition is appropriate.[9]

## IV. CONCLUSION

For the reasons discussed above, we will return the record to USCIS for a thorough investigation of the petitioner's arguments and evidence regarding marriage fraud.[10]  USCIS should take further action as warranted in this case.

**ORDER:**  The record is returned for further consideration of the visa petition consistent with the foregoing opinion.

---

[9]   DHS can also determine whether to consider this evidence in the context of evaluating a Form I-751 petition.

[10]  The petitioner also requested on appeal that we revisit our precedential decisions regarding the standards related to marriage fraud.  However, these issues were not addressed in the Director's decision below and are not properly before us.  In light of our disposition of this matter, we need not reach the petitioner's remaining appellate arguments.  *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").