**INTERMED INSURANCE CO.,**
Plaintiff–Respondent,

v.

**Doyle B. HILL, D.O., Hartville Medical Center, P.C., and Jeffrey David Martin,**
Defendants–Respondents,

and

**Penny L. Boyce, Defendant–Appellant.**

No. SD 31306.

Missouri Court of Appeals,
Southern District,
Division One.

March 12, 2012.

Rehearing Denied March 21, 2012.

Application for Transfer Denied
March 30, 2012.

Application for Transfer
Denied May 29, 2012.

Robert W. Freeman, Springfield, MO, for Appellant.

Brian D. Malkmus, Springfield, MO, for Respondent Intermed Ins. Co.

DON E. BURRELL, Presiding Judge.

Penny L. Boyce ("Appellant") appeals the trial court's grant of summary judgment in favor of Intermed Insurance Co. ("Intermed") in a declaratory judgment action brought to determine whether a professional liability insurance policy issued by Intermed provided coverage for a medical clinic's negligent failure to supervise a physician's assistant ("PA") who sexually assaulted Appellant under the guise of examining her. Appellant claims, among other things, that the trial court erred in finding that Clinic's failure to supervise PA did not constitute a separate, concurrent proximate cause of her injuries. Because we agree with that contention, we reverse the trial court's summary judgment in favor of Intermed and remand the matter for further proceedings consistent with this opinion.[1]

---

1. Although Appellant's brief sufficiently supports her claim that the trial court erred in granting summary judgment in favor of Intermed, it does not demonstrate why the uncontroverted facts set forth in Appellant's motion for summary judgment entitle her to a judgment in her favor as a matter of law on counts I and II of her counterclaim.

Generally, the denial of a summary judgment is not appealable. *Sanders v. Ins. Co. of N. Am.*, 42 S.W.3d 1, 8 (Mo.App.2000). In certain circumstances, the denial of a

### Factual and Procedural Background

Doyle Hill ("Dr. Hill") and William Berner ("Berner") were the owners of the Hartville Medical Management Company ("Management Company"), which operated the Hartville Medical Center ("Clinic"). Management Company staffed and supervised Clinic. Clinic, Management Company, and Dr. Hill were protected by two liability insurance policies. The first was issued by Cincinnati Insurance Company and provided general liability coverage. The second was issued by Intermed and provided professional liability coverage.

The Intermed policy provided coverage for negligence in the rendering of or failure to render professional services, including liability arising out of the acts of a physician's assistant if the physician's assistant was supervised in accordance with the applicable statutes and regulations.[2] The Intermed policy excluded coverage for "liability arising from sexual relations, activity, acts or conduct with any person, with or without consent of any such person[.]" PA worked at Clinic and was supervised at all pertinent times by Dr. Hill.

In 2003, Clinic's office manager began getting complaints from Clinic's medical assistants that PA was telling them not to chaperone his examinations of young women as required by Clinic policy. She said female patients had also complained to her that PA was conducting medically unnecessary breast and pelvic exams. The office manager reported the situation to Berner, who told her "not to worry about it[.]" She was not aware that any investigation was made in response to these complaints, and there was no change in policy after she relayed them to Berner. Eventually, the office manager decided to resign. After resigning, she complained about the situation to the State Board of Healing Arts.

On December 14, 2004, and again on December 17, 2004, Appellant went to Clinic with complaints of hip pain and throat problems. PA was assigned to examine and treat Appellant. PA instructed Appellant to disrobe. After Appellant had done so, PA massaged her breast, explaining that "he needed to feel the nerves and the bone structure[.]" PA also placed his fingers inside Appellant's vagina. He then told Appellant that she should make an appointment to return for a cortisone shot. When Appellant returned for the shot, PA again inserted his fingers into her vagina.

In early 2005, PA was charged with six counts of deviate sexual assault related to his contact with Appellant and other females. PA subsequently pleaded guilty to three of those charges—one of which related to his contact with Appellant.

Appellant filed her underlying tort suit against PA, Dr. Hill, Clinic and Management Company, alleging one count of sex-

---

party's motion for summary judgment can be reviewed when its merits are completely intertwined with a grant of summary judgment in favor of an opposing party. *See Stone v. Crown Diversified Indus. Corp.,* 9 S.W.3d 659, 664 (Mo.App.1999); *Kaufman v. Bormaster,* 599 S.W.2d 35, 38 (Mo.App. 1980). We may direct in this posture, if proper, the judgment that the court should have entered. *See* Rule 84.14; *Redpath v. Mo. Highway & Transp. Comm'n,* 14 S.W.3d 34, 41 (Mo.App.1999). *Transatlantic Ltd. v. Salva,* 71 S.W.3d 670, 675–76 (Mo.App. W.D.2002). It is not clear that such a direction would be proper here. As a result, Appellant's request that we also direct the trial court to enter a summary judgment in her favor on those counterclaims is denied. We express no opinion as to whether such a judgment could be entered if properly presented and supported.

2. Intermed does not claim that the acts of PA were not covered by its policy because PA was not supervised as required by the applicable statutes and regulations.

ual assault and battery against PA and one count of negligent hiring, supervision, and retention against the other defendants. Appellant also sought punitive damages from each defendant. An attorney hired by Dr. Hill, Clinic, and Management Company reported the suit to Intermed and demanded a defense. Intermed replied that it would do so only under a reservation of rights. Dr. Hill, Clinic, and Management Company refused a defense under a reservation of rights, and the attorneys they hired proceeded to defend the suit. Cincinnati Insurance Company agreed to provide a defense to Clinic under its general liability policy.

Prior to trial, Dr. Hill, Clinic, Management Company, and Cincinnati Insurance Company entered into a section 537.065 settlement agreement with Appellant.[3] Under that agreement, Cincinnati Insurance Company agreed to pay Appellant $242,500 plus court costs in exchange for her agreement to dismiss her complaints against all defendants except Clinic. As for Clinic, it agreed: 1) to stipulate to many of the facts alleged in Appellant's lawsuit; and 2) that it would not oppose any evidence Appellant offered at trial. In return, Appellant agreed that she would seek to recover no more than $1,242,500 from Clinic and would seek to enforce any such judgment only against Intermed. Dr. Hill, Clinic, and Management Company also assigned their rights under the Intermed policy to Appellant.

The underlying tort case was tried on May 27, 2008. Appellant proceeded only against Clinic and requested findings of fact and conclusions of law on specific issues. At the close of all evidence, the trial court entered judgment for Appellant against Clinic in the amount of $1,242,500, plus court costs. The trial court attached and incorporated into its judgment detailed factual findings. In addition to other findings, the trial court found that Clinic had a duty to control PA "while acting outside the scope of his employment" in order to prevent him from intentionally harming patients and "from conducting himself as to create an unreasonable risk of bodily harm to [Clinic's patients] by conducting inappropriate and medically unnecessary breast and pelvic exams for his own sexual gratification[.]"

After that judgment was entered, Intermed filed the instant petition for declaratory judgment against Appellant, PA, Dr. Hill, Clinic, and Management Company. The petition sought an order declaring that the damages arising out of PA's sexual assault of Appellant were not covered by the policy Intermed had issued to Clinic because the assault was not the rendering of or failure to render professional services and because liability arising from the assault was excluded from coverage as: 1) it involved an intentional act; 2) it involved sexual acts or conduct with any person; 3) it involved criminal acts; and 4) PA was improperly supervised at the time of the act. Appellant answered the petition and, pursuant to the assignment of rights she received from Clinic, Appellant filed counterclaims for breach of contract, bad faith refusal to settle, and vexatious refusal to pay. The parties then filed cross-motions for summary judgment.

The trial court thereafter entered the summary judgment in favor of Intermed now challenged by Appellant on appeal. As pertinent to Appellant's points, the trial court specifically found that Clinic's supervision of PA was within the scope of the Intermed policy but that PA's sexual assault of Appellant was excluded from the policy's coverage by exclusion (j), which provided that the insurance did not apply

3.  Unless otherwise indicated, all statutory references are to RSMo Cum.Supp.2006.

to "liability arising from sexual relations, activity, acts or conduct with any person[.]" The trial court also found that Clinic's negligent supervision of PA was not a separate and distinct cause of Appellant's damages.

## Applicable Principles of Review

We review *de novo* the trial court's grant of summary judgment. *Roth v. The Equitable Life Assur. Soc'y Of the U.S.*, 210 S.W.3d 253, 258 (Mo.App. E.D. 2006). "As such, this court reviews the trial court's determination independently, without deference to that court's conclusions." *O.L. v. R.L.*, 62 S.W.3d 469, 473 (Mo.App. W.D.2001). We also keep in mind that "[s]ummary judgment is 'an extreme and drastic remedy' and should be exercised with great care." *Id.* (quoting *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 377 (Mo. banc 1993)). In regard to insurance contracts in particular,

> [d]isputes arising from interpretations and application of insurance contracts are matters of law for the court where there are no underlying facts in dispute. *Moore v. Commercial Union Insurance Co.*, 754 S.W.2d 16, 18 (Mo.App.1988). An insurance contract is designed to furnish protection; therefore it will be interpreted to grant coverage rather than defeat it. *American Family Mutual Insurance Co. v. Turner*, 824 S.W.2d 19, 21 (Mo.App.1991). Exclusion clauses in insurance policies are to be strictly construed against the insurer. *Aetna Casualty & Surety Company v. Haas*, 422 S.W.2d 316, 321 (Mo.1968).

*Centermark Prop., Inc. v. Home Indem. Co.*, 897 S.W.2d 98, 100–01 (Mo.App. E.D. 1995).

## Analysis

Appellant's three points on appeal allege the trial court erred in: 1) determining that her claim fell within the exclusion of coverage for liability arising out of sexual acts; 2) finding that Intermed had no duty to defend under the policy because the duty to defend is broader than the duty to indemnify; and 3) finding that there was no coverage under the Intermed policy because Clinic's negligent supervision and retention of PA was a separate, concurrent proximate cause of Appellant's injuries. Finding it dispositive, we address only Appellant's third point.

### Point III—Concurrent Proximate Cause

Appellant argues Clinic's negligent supervision of PA constituted a separate, concurrent proximate cause of her injuries because the elements of causation for her negligent supervision claim can be stated without reference to the sexual assault in that the acts constituting negligent supervision took place and were brought to Clinic's attention long before PA's sexual assault of Appellant occurred. We agree.

Missouri courts have recognized "that where an insured risk and an excluded risk constitute concurrent proximate causes of an accident, a liability insurer is liable as long as one of the causes is covered by the policy." *Bowan ex rel. Bowan v. General Sec. Indem. Co. of Arizona*, 174 S.W.3d 1, 5 (Mo.App. E.D.2005) (citing *Braxton v. United States Fire Ins. Co.*, 651 S.W.2d 616, 619 (Mo.App. E.D.1983)). Under this rule, an insurance policy will be construed to provide coverage where an injury was proximately caused by two events—even if one of those events was subject to an exclusion clause—if the differing allegations of causation are "independent and distinct." *Gateway Hotel Holdings, Inc. v. Lexington Ins. Co.*, 275 S.W.3d 268, 282 (Mo.App. E.D.2008). That is,

[i]f the essential elements of a negligence claim asserting a cause of injury can be stated without regard to the essential elements of a differing claim of negligence that also is asserted to have caused the same injury, then the separate causes are independent and distinct from the other, and support the application of the concurrent proximate cause rule.

*Id.*

■ Appellant's first cause of action was against PA for the intentional tort of sexual assault and battery. "As to tortious conduct, a battery consists of intended, offensive, bodily contact with another." *Duvall v. Lawrence*, 86 S.W.3d 74, 80 (Mo. App. E.D.2002). Her fourth cause of action was against Clinic for its negligent hiring, supervision, and retention of PA. With respect to the essential elements of negligent supervision, Missouri has adopted the test laid out in the Restatement (Second) of Torts § 317 (1965). *See Reed v. Kelly*, 37 S.W.3d 274, 278 (Mo.App. E.D.2000).

A master is under the duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them if

(a) the servant

(i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or

(ii) is using a chattel of the master, and

(b) the master

(i) knows or has reason to know that he has the ability to control his servant, and

(ii) knows or should know of the necessity and opportunity for exercising such control.

*Id.*

Stating the essential elements of these two causes of action reveals that they are distinct; proof of negligent supervision does not require proof of an offensive touching. The applicability of the concurrent proximate cause rule to the present case is further supported by an examination of the facts in *Centermark*. In that case, a third party took a vehicle from the insured's premises and crashed it into a police cruiser, injuring the officer inside. 897 S.W.2d at 99. The officer sued the insured for negligently supervising its security officer. *Id.* The insurance company, which had issued insured a commercial general liability policy, attempted to avoid coverage based on a policy provision that excluded coverage for "bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of . . . any automobile[.]" *Id.* at 100. The Eastern District found

coverage based on the fact that there are allegations of negligence that appear independent of ownership, maintenance, operation, or use of an automobile—that is, that [insured] failed to comply with set procedures for apprehending, subduing, and controlling third parties and persons suspected of criminal activity and it failed to have proper and adequate hiring practices and training policies and programs for its security officers.

*Centermark Prop., Inc.*, 897 S.W.2d at 101 (citing *Braxton*, 651 S.W.2d at 616).

In similar fashion, while one cause of Appellant's harm was certainly PA's excluded, intentional sexual assault, Appellant proved in her underlying tort case that her harm was also proximately caused by Clinic's knowledge of PA's propensity

to engage in medically unnecessary physical examinations that created an unreasonable risk of bodily harm to patients and that Clinic negligently failed to thereafter discharge him or otherwise act to prevent PA from conducting any further medically unnecessary physical examinations.

In support of its contrary contention, Intermed relies on *Gateway*. Intermed asserts that *Gateway* approves the use of a simple "but-for" analysis in determining whether a particular cause mandates the application of the concurrent proximate cause rule, then concludes that Appellant's claim does not qualify because her injuries would not have occurred but for the excluded sexual assault by PA. Intermed's suggested interpretation of *Gateway* ignores critical facts present in that particular case.

In *Gateway*, a hotel sponsored a boxing match. 275 S.W.3d at 271. Due to the inherently dangerous nature of that activity, part of the agreement between the hotel and the promoter of the match was that the promoter would be responsible for providing a ringside doctor and an on-call ambulance. *Id.* One of the boxers was injured during the match, and his injuries were aggravated by the promoter's failure to provide medical monitoring and/or an on-call ambulance. *Id.* at 271–72. The injured boxer sued the hotel, and in a separate declaratory judgment action, the hotel's insurance carrier successfully argued that the event was excluded from coverage based on a policy provision that excluded liability for bodily injury to any person engaged in "[a]ny athletic, exercise or sports activity[.]" *Id.* at 273–74.

On appeal, the hotel argued that coverage was not excluded because the "failure to make available adequate medical care at the site of the [ ] boxing match" was a concurrent proximate cause of the boxer's injuries. *Id.* at 274. The Eastern District disagreed, citing as its reason the specific factual finding made by the jury in the underlying action that boxing was an inherently dangerous activity. *Id.* at 283. The Eastern District held, under "the unique facts of th[e] case[,]" that "[w]ithout the boxing activity, there could be no finding of liability on the part of [the hotel] because *only under the inherently dangerous activity doctrine* could [the hotel] be found negligent for failing to provide an ambulance or medical personnel for [the injured boxer]." *Id.* (emphasis added). In other words, because the unique nature of the underlying cause of action was an inherently dangerous activity resulting in vicarious liability, *Id.* at 283 and n.4, the insured and excluded risks were not independent, concurrent proximate causes of the harm.

The underlying case here did not involve an inherently dangerous activity or rest upon vicarious liability as sexually assaulting patients for his own sexual gratification was not within the scope of PA's employment.[4] Supervision of a physician's assistant is a medical activity designed to prevent improper medical care. The trial court found in the underlying action that Clinic had a duty to Appellant "to exercise reasonable care so as to control it's servant, [PA], while acting outside the scope of his employment as to prevent him from ... conducting himself as to create an unreasonable risk of bodily harm to [its patients.]"

The proper supervision of medical personnel is not inherently related to the prevention of sexual assault. Because the

4. "If the servant is acting within the scope of his employment, the master may be vicariously liable under the principles of the law of Agency. *See* Restatement of Agency, Second, Chapter 7." Comment "a," Restatement (Second) of Torts § 317 (1965).

Clinic's negligent supervision of PA constituted an independent, concurrent proximate cause of Appellant's injuries, the trial court erred in granting summary judgment in favor of Intermed. The judgment is reversed, and the matter is remanded for further proceedings consistent with this opinion.

RAHMEYER and LYNCH, JJ., concur.