# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-1725

_____

Great Lakes Insurance SE

*Plaintiff - Appellee*

v.

Michael L. Andrews

*Defendant*

Ray A. Perrin; RAJJ Entertainment Inc., doing business as Tool Shed Lounge

*Defendants - Appellants*
_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City
_____

Submitted: January 13, 2022
Filed: May 10, 2022
_____

Before LOKEN, GRUENDER, and GRASZ, Circuit Judges.
_____

GRUENDER, Circuit Judge.

A patron of RAJJ Entertainment, which is a bar doing business as "Tool Shed Lounge," successfully sued RAJJ and its owner, Ray A. Perrin, for negligence after being injured in the bar's parking lot. RAJJ and Perrin's insurance company, Great

Lakes Insurance, then sued for a declaration stating that it was not required to indemnify RAJJ and Perrin for the damages award because the insurance policy excluded from coverage injuries that arose from physical altercations. The district court[1] granted summary judgment to Great Lakes, and we affirm.

## I.

In August 2012, Michael Andrews went to the Tool Shed Lounge. While Andrews was in the parking lot, Kyle Buelterman, a bar employee, approached him. Buelterman yelled and threatened to attack Andrews, and as Andrews was turning around, Buelterman struck him repeatedly on his head and body, causing injury.

Andrews initiated a negligence lawsuit in state court against RAJJ and Perrin. The petition for damages alleged that Buelterman had "placed [Andrews] in imminent apprehension of harmful contact and fear of physical injury," and during the trial, Andrews's counsel described the event as an "assault" and an attack that came "out of the blue." Andrews testified that Buelterman "hit [Andrews] on the left side of [his] face when [he] w[as]n't looking." Andrews claimed that RAJJ and Perrin knew or should have known about Buelterman's "propensity for violence" based on his "vicious tendencies," including "prior particular acts of a mischievous, wanton and brutal nature," and that RAJJ and Perrin failed to anticipate, guard against, and warn about Buelterman's conduct. The jury returned a verdict in favor of Andrews, finding RAJJ and Perrin liable for (1) "failing to provide safe travel or failing to protect or failing to warn or failing to provide adequate security" and (2) "negligent hiring, retaining or supervision." The court entered judgment and ordered that RAJJ and Perrin were separately liable for $97,500 each. RAJJ and Perrin appealed the state court judgment, describing the incident in the parking lot as a "physical altercation" in their Notice of Appeal.[2]

---

[1]The Honorable Brian C. Wimes, United States District Judge for the Western District of Missouri.

[2]The jury instructions also referred to the incident as a "physical altercation."

Great Lakes then filed a complaint in federal court against RAJJ, Perrin, and Andrews seeking a declaratory judgment stating that its insurance policy did not require it to indemnify RAJJ and Perrin because Andrews's injuries were excluded.

The insurance policy provides, in relevant part: "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." However, the policy contains the following exclusion:

> This insurance does not apply to "bodily injury" . . . arising out of an "assault", "battery", or "physical altercation":
>
> a.      Whether or not caused by, at the instigation of, or with the direct or indirect involvement of an insured, an insured's employees, patrons, or other persons in, on, near, or away from an insured's premises; or
>
> b.      Whether or not caused by or arising out of an insured's failure to properly supervise or keep an insured's premises in a safe condition; or
>
> c.      Whether or not caused by or arising out of any insured's act or omission in connection with the prevention, suppression, or failure to warn of the "assault", "battery", or "physical altercation", or providing or not providing or summoning or not summoning medical or other assistance in connection with the "assault"[,] "battery", or "physical altercation", including but not limited to, negligent hiring, training, or supervision; or
>
> d.      Whether or not caused by or arising out of negligent, reckless, or wanton conduct by an insured, an insured's employees, patrons, or other persons.

The policy provides the following definitions:

> "Assault" means any attempt of [sic] threat to inflict injury on another including any conduct that would reasonably place another in apprehension of such injury.

"Battery" means the intentional or reckless physical contact with or any use of force against a person without his or her consent that entails some injury or offensive touching whether or not the actual injury inflicted is intended or expected.

"Physical altercation" means a dispute between individual [sic] in which one or more persons sustain bodily injury arising out of the dispute.

In this declaratory-judgment action, the district court granted summary judgment to Great Lakes, and RAJJ and Perrin appeal.

## II.

We review a grant of summary judgment *de novo*. *Green Plains Otter Tail, LLC v. Pro-Env't, Inc.*, 953 F.3d 541, 545 (8th Cir. 2020). "Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Id.* Because this is a diversity action in which Missouri law controls, "we are bound by the decisions of the Missouri Supreme Court regarding issues of substantive state law." *Burger v. Allied Prop. & Cas. Ins.*, 822 F.3d 445, 447 (8th Cir. 2016). "Decisions by the Missouri Court of Appeals may be used as an indication of how the Missouri Supreme Court may rule, but we are not bound to follow these decisions." *Id.*

### A.

First, we address whether the assault-and-battery exclusion applies to the damages award. Insurance companies are not required to indemnify the insured for injuries that are excluded by a policy. *Sprint Lumber, Inc. v. Union Ins.*, 627 S.W.3d 96, 114 (Mo. Ct. App. 2021) ("If relevant evidence adduced at [the underlying] trial contradicts or adds facts necessarily indicating the absence of coverage, then the insurer has no duty to indemnify the insured."); *see also McCormack Baron Mgmt. Servs., Inc. v. Am. Guarantee & Liab. Ins.*, 989 S.W.2d 168, 173 (Mo. 1999) (noting that the duty to indemnify is determined by the facts established in the underlying

trial). "The burden of showing that an exclusion to coverage applies is on the insurer." *Manner v. Schiermeier*, 393 S.W.3d 58, 62 (Mo. 2013). Generally, "where a plaintiff's negligence claim arises out of an assault or battery, the assault or battery exclusion bars coverage of the insured's negligence claim." *Trainwreck W. Inc. v. Burlington Ins.*, 235 S.W.3d 33, 44 (Mo. Ct. App. 2007); *see also Acceptance Ins. v. Winning Concepts of Westport, Inc.*, 842 S.W.2d 206, 208 (Mo. Ct. App. 1992) (holding that "[n]egligently hiring persons with violent propensities which negligence results in an individual being assaulted and battered . . . [was] excluded under the terms of the policy").

Here, "[t]he clear language of the policy controls." *See Acceptance Ins.*, 842 S.W.2d at 208; *Hempen v. State Farm Mut. Auto. Ins.*, 687 S.W.2d 894, 894 (Mo. 1985) ("Unless policies are ambiguous, they must be enforced by the courts as written."). Andrews suffered a "'bodily injury' . . . arising out of" Buelterman's actions. Those actions, as described by Andrews's petition, testimony, and theory of the case in the negligence trial, undeniably fit the policy's definitions of assault, battery, and physical altercation. The verdict indicates that the jury agreed. Therefore, the "relevant evidence adduced at trial" confirms the exclusion of coverage. *See Sprint Lumber*, 627 S.W.3d at 114.

RAJJ and Perrin rely on *Penn-Star Insurance v. Griffey*, 306 S.W.3d 591, 599 (Mo. Ct. App. 2010), but that case is distinguishable. In *Penn-Star*, a bouncer ejected someone from a bar and dropped him on a sidewalk, failing to realize that the patron was unconscious. *Id.* at 594. The court held that the assault-and-battery exclusion did not apply because, although the bouncer's action "conceivably *could have been* an 'assault and battery' . . . [,] we do not know that it *was* an assault and battery." *Id.* at 602-03. In other words, the insurer did not meet its burden of proof. *See id.*; *Manner*, 393 S.W.3d at 62. By contrast, Buelterman's conduct was a textbook assault and battery, and the incident was clearly a physical altercation. *See Penn-Star*, 306 S.W.3d at 600 (noting that a "physical altercation" involves "heated, angry physical contact between the participants, as in a personal fight"). RAJJ and Perrin do not argue otherwise.

-5-

RAJJ and Perrin's remaining arguments are meritless. First, they claim the exclusion does not apply because the underlying lawsuit "arose out of" their negligence—not any assault, battery, or physical altercation. But the policy language concerns how the *bodily injury* arose, not how the *lawsuit* arose. At most, Andrews's injuries arose from RAJJ and Perrin's negligence *in addition to* the assault, battery, and physical altercation. The policy expressly anticipates this situation, stating that the exclusion applies to injuries "[w]hether or not caused by or arising out of" an insured's omissions, including "negligent hiring, training, or supervision." *See Acceptance Ins.*, 842 S.W.2d at 208. Second, RAJJ and Perrin argue that the exclusion does not apply because neither "RAJJ [n]or Perrin engaged in assault or battery." That is irrelevant because the exclusion covers injuries regardless of the "direct or indirect involvement of an insured," and the policy contemplates that they may be "caused by, at the instigation of, or with the direct or indirect involvement of . . . an insured's employees."

Missouri law "strictly construes exclusionary clauses against the drafter," *Burns v. Smith*, 303 S.W.3d 505, 510 (Mo. 2010) (emphasis omitted), so prudent insurance companies take pains to avoid ambiguities when drafting policy language. Great Lakes successfully did so here.

## B.

Second, RAJJ and Perrin argue that even if the assault-and-battery exclusion applies, their negligence counts as a separate, covered cause under the concurrent-proximate-cause rule. *See Taylor v. Bar Plan Mut. Ins.*, 457 S.W.3d 340, 347-48 (Mo. 2015); *Intermed Ins. v. Hill,* 367 S.W.3d 84, 88 (Mo. Ct. App. 2012). The rule provides that "where an insured risk and an excluded risk constitute concurrent proximate causes of an accident, a liability insurer is liable as long as one of the causes is covered by the policy." *Intermed*, 367 S.W.3d at 88. Under the rule, "the injury must have resulted from a covered cause that is truly independent and distinct from the excluded cause." *Taylor*, 457 S.W.3d at 348 (internal quotation marks omitted).

-6-

The concurrent-proximate-cause rule does not apply here because RAJJ and Perrin's negligence is not a "covered cause." *See id.* The policy states that injuries arising out of an assault, battery, or physical altercation are excluded whether or not they were "caused by or arising out of" (1) "an insured's failure to properly supervise or keep an insured's premises in a safe condition"; (2) an insured's "act or omission in connection with the prevention, suppression, or failure to warn of the 'assault', 'battery', or 'physical altercation' . . . , including but not limited to, negligent hiring, training, or supervision"; and (3) "negligent, reckless, or wanton conduct by an insured." So, if an assault, battery, or physical altercation is excluded, then the policy also excludes negligence that caused the assault, battery, or physical altercation. The specific causes described in the jury verdict—failing to "provide safe travel," "protect," "warn," or "provide adequate security," and "negligent hiring, retaining, or supervision"—all fall within the exclusion. Because neither RAJJ and Perrin's negligence nor the assault, battery, and physical altercation is a covered cause, it does not matter how "independent and distinct" they are for the purposes of the concurrent-proximate-cause rule; the rule does not apply.

The Missouri Court of Appeals' decision in *Adams v. Certain Underwriters at Lloyd's of London* does not change this outcome. *See* 589 S.W.3d 15, 32 (Mo. Ct. App. 2019). That case was about an insurer's duty to defend a negligence lawsuit based on injuries sustained in a shooting outside a nightclub. *Id.* at 21, 26. Like the policy at issue here, the *Adams* policy excluded bodily injuries "arising out of assault or battery, or out of any act or omission in connection with assault or battery, or with the prevention or suppression of an assault or battery." *Id.* at 22. It also excluded bodily injuries "arising out of charges or allegations of negligent hiring, training, placement, or supervision with respect to [an assault-and-battery provision]." *See id.* Yet the court held that "assuming [the victim's] injury arose out of assault or battery, the negligence of [the insured and the nightclub's owner] was a concurrent proximate cause of [the victim's] injury." *Id.* at 32.

*Adams* is not binding, *see Burger*, 822 F.3d at 447, nor is it persuasive. Although the case discusses the concurrent-proximate-cause rule at length, it never addresses the threshold question whether the insured's negligence was covered by

the policy, *Adams*, 589 S.W.3d at 29-34, as it must be for the rule to apply, *see Taylor*, 457 S.W.3d at 348. Instead, it proceeds to analyze whether the negligence claim "could be covered . . . as an independent and distinct cause," as though the concurrent-proximate-cause rule could override policy language that would otherwise exclude negligence relating to an assault and battery. *Adams*, 589 S.W.3d at 32.

Furthermore, even if RAJJ and Perrin's negligence were covered, that would not require Great Lakes to indemnify them because their negligence was not "truly independent and distinct" from the assault, battery, or physical altercation. *See Taylor*, 457 S.W.3d at 348 (internal quotation marks omitted). The independent-and-distinct requirement has not been interpreted consistently by Missouri courts. In some cases, courts have adopted a but-for approach, asking whether the injury would not have occurred but for the excluded cause. *See, e.g.*, *Hunt v. Capitol Indem. Corp.*, 26 S.W.3d 341, 345 (Mo. Ct. App. 2000) (holding that negligence was not independent and distinct because "[w]ithout the underlying assault and battery, there would have been no injury and therefore no basis for plaintiffs' action . . . for negligence"). In other cases, courts have taken an element-based approach, asking whether the elements of a covered cause, such as negligence, require pleading any element of an excluded cause, such as assault and battery. *See, e.g.*, *Intermed Ins. v. Hill*, 367 S.W.3d 84, 88-89 (Mo. Ct. App. 2012) (holding that two causes were independent and distinct because "proof of negligent supervision does not require proof of an offensive touching," an element of battery).

In recognizing the concurrent-proximate-cause rule in *Taylor*, the Missouri Supreme Court did not expressly endorse either approach. 457 S.W.3d at 347-48. Instead, it appeared to favor a narrow application of the doctrine, insisting that the covered cause be "wholly separate" from the excluded cause, that is, "truly" and "totally" independent and distinct from it. *See id.* at 347 & n.8, 348. The court also signaled that the range of foreseeable harms is relevant to whether two causes are independent and distinct. *See id.* at 347 n.8. (citing *Intermed*, 367 S.W.3d at 89-90) (describing *Intermed*, a prior Missouri Court of Appeals case as holding that the defendant's negligence was "totally independent" from an excluded cause where the

negligence "could have resulted in multiple kinds of injury, and it was only incidental that it in fact resulted in an injury excluded by the policy"). If an injury is just one of many foreseeable harms that could have occurred because of the covered conduct, the excluded cause is incidental. *See id.* Thus, for example, the negligent hiring of a maniac might be independent and distinct from his act of arson, but not so for the negligent hiring of a pyromaniac.

The foreseeability analysis further distinguishes Great Lakes's case from *Adams*. In *Adams*, a teenager was shot and killed outside of a nightclub that had engaged in various negligent acts, including "inviting a large group of children to a parking lot, with no supervision, no security, and no police presence in a dangerous neighborhood at night" as well as locking its doors when there was gunfire. 589 S.W.3d at 22, 33. The court noted that the club's negligence could have resulted in "innumerable possible harms," such as another victim being "struck by a random bullet," and it concluded that if an assault and battery occurred, it was "only incidental." *Id.* at 33.

By contrast, the scope of foreseeable harms from RAJJ and Perrin's negligence is narrow. According to Andrews's petition, RAJJ and Perrin knew about Buelterman's history and reputation yet failed to prevent the attack on Andrews. The petition alleged that Buelterman was known to be violent and belligerent; it did not paint him as clumsy, lascivious, or having other potentially harmful characteristics. The harms that foreseeably flow from failing to restrain such a person are few—they include assaults, batteries, physical altercations, and not much more. Thus, it was not "only incidental" that RAJJ and Perrin's negligence resulted in precisely those things. *See Taylor*, 457 S.W.3d at 347 n.8. Because the excluded causes of Andrews's injuries were not truly independent and distinct from RAJJ and Perrin's negligence, the concurrent-and-proximate-cause rule would not require indemnification even if their negligence were covered.

## III.

For the foregoing reasons, we affirm the district court's grant of summary judgment to Great Lakes.

_____