# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-1058

_____

Teresa Ann Thompson, individually and as Special Administer of the Estate of
Winfield Thompson, Sr., Deceased; Winfield Thompson; Melissa Prochnow, as
Special Administrator/Personal Representative of the Estate of Nicholas Helgeson;
Jamie Helgeson, as Special Administrator/Personal Representative of the Estate of
Nicholas Helgeson; Nicholas Helgeson

*Plaintiffs - Appellants*

v.

William P. Harrie; Nilles Law Firm, also known as Nilles, Selbo & Harrie LTD;
Nodak Insurance Company, formerly known as Nodak Mutual Insurance Company
of Fargo; Nodak Mutual Group, Inc., a Mutual Holding Company; N.I. Holdings,
Inc., an Intermediate Stockholding Company

*Defendants - Appellees*
_____

Appeal from United States District Court
for the District of South Dakota - Southern
_____

Submitted: November 17, 2022
Filed: February 3, 2023
_____

Before BENTON and ERICKSON, Circuit Judges, and BUESCHER,[1] District
Judge.

_____

---

[1]The Honorable Brian C. Buescher, United States District Judge for the
District of Nebraska, sitting by designation.

ERICKSON, Circuit Judge.

Teresa Ann Thompson, individually and as special administrator of the Estate of Winfield Thompson, Sr. (collectively, "Thompson"), appeals following the district court's[2] dismissal of her claims for legal malpractice, fraud, and deceit against William Harrie and the Nilles Law Firm (collectively, "the law firm"). We grant Thompson's motion to supplement the record. Because we predict the South Dakota Supreme Court would prohibit the assignment of legal malpractice claims and the district court did not err in dismissing the remaining claims, we affirm.

## I. BACKGROUND

On November 6, 2009, Winfield Thompson, Sr., died as the result of injuries he sustained in a car accident in Roberts County, South Dakota. Winfield was a passenger in a vehicle that collided with a vehicle owned by Patrick Nelson and driven by Nicholas Helgeson. Helgeson, a North Dakota resident, was insured under an automobile policy issued to his parents by Nodak Insurance Company ("Nodak"). Thompson commenced a personal injury and wrongful death action in South Dakota state court against Helgeson, alleging Helgeson's failure to exercise reasonable care in the operation of a motor vehicle was the proximate and direct cause of the accident that injured and ultimately killed her father. Thompson sought compensatory, special, and general damages on behalf of Winfield as well as damages on behalf of herself, Winfield's heirs, and the Estate of Winfield Thompson, Sr. Nodak hired William Harrie, who was licensed in North Dakota, to defend Helgeson in the wrongful death action.

The wrongful death action was put on hold when Nodak initiated a declaratory judgment action, seeking a determination on whether its policy covered Helgeson.

---

[2]The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota.

After the court resolved the coverage dispute and determined Nodak was obligated to provide coverage, Thompson's attorney sent a written settlement demand to Harrie. When Harrie failed to respond, Thompson's attorney wrote again, this time demanding a formal answer to the wrongful death complaint within thirty days. When no answer was filed, Thompson moved for entry of default judgment.

After receiving the motion for entry of default judgment, Harrie signed and filed an answer on Helgeson's behalf. Although Harrie's partner, Mark Hanson, who is licensed in South Dakota, was listed on the pleading, only Harrie signed the document. The court denied the motion for entry of default judgment. About a year and a half later, Thompson discovered Harrie was neither licensed in South Dakota nor admitted pro hac vice and filed a renewed motion to quash the answer. Harrie promptly moved for pro hac vice admission, which the court denied. The court then quashed Harrie's answer and entered default judgment.

Nodak then hired an attorney located in Sioux Falls, South Dakota, who unsuccessfully moved to set aside the default judgment. Helgeson died prior to trial and his estate was substituted as the defendant in the wrongful death action. The action proceeded to trial solely on the issue of damages. The jury awarded $127,219.60 to Thompson. The court entered an amended judgment in favor of Thompson in the total amount of $160,684.12, which consisted of the jury award; $24,131.86 in prejudgment interest; $5,857.50 in attorney's fees and taxes; and $3,475.16 in taxable costs and disbursements.

In January 2018, Thompson sued the law firm and Nodak in South Dakota state court, alleging claims for the unauthorized practice of law, fraud and deceit, civil conspiracy, and barratry/abuse of process. The law firm removed the case to federal court, and the district court dismissed the entire suit for failure to state a claim. Following the dismissal, Thompson agreed with Helgeson's estate that she would not execute the judgment if Helgeson's estate assigned its potential claims against the law firm and Nodak to her. This agreement, which was reduced to

writing, expressly included claims of malpractice, and directed that Thompson was entitled to all proceeds recovered from the assigned claims.

Following the assignment, Thompson again sued the law firm and Nodak in state court, alleging legal malpractice, breach of contract, bad faith, failure to pay benefits, and punitive damages. After removal to federal court, the law firm moved to dismiss the legal malpractice and punitive damages claims. The district court granted the motion, predicting the South Dakota Supreme Court would likely hold that legal malpractice claims are not assignable. The parties resolved the remaining claims and cross-claims involving Nodak, and the district court dismissed these claims. Thompson appeals.

## II.    ANALYSIS

We review *de novo* the district court's decision granting a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), accepting as true all factual allegations and viewing them in the light most favorable to the nonmoving party. Schulte v. Conopco, Inc., 997 F.3d 823, 825 (8th Cir. 2021) (quoting Glick v. W. Power Sports, Inc., 944 F.3d 714, 717 (8th Cir. 2019)). Similarly, the district court's interpretation of state law is reviewed *de novo*. Lindsay Mfg. Co. v. Hartford Acc. & Indem. Co., 118 F.3d 1263, 1267 (8th Cir. 1997) (citation omitted). Where, as here, a state supreme court has not yet spoken on an issue, "we must attempt to predict what that court would decide if it were to address the issue." Id. at 1268. In so doing, we can consider relevant precedent, analogous decisions, considered dicta, and any other reliable data. Id. (quoting Ventura v. Titan Sports, Inc., 65 F.3d 725, 729 (8th Cir. 1995)).

In the legal malpractice context, South Dakota has a strict privity rule, requiring as a threshold matter the existence of an attorney-client relationship. Chem-Age Indus., Inc. v. Glover, 652 N.W.2d 756, 769 (S.D. 2002). The reasoning for the greater protection is based on the confidential nature of the relationship that requires the utmost trust and confidence. Id. at 770. The South Dakota Supreme

Court has explained that any possible exception to the strict privity rule: (1) "should not expose attorneys to unlimited litigation brought by anyone who might conceivably derive some indirect benefit from the performance of attorneys," and (2) "should have limited application in adversarial proceedings because the rules of ethics require that lawyers represent their clients zealously within the bounds of the law and that lawyers ordinarily not represent or act for conflicting interests." Id. at 769.

While the South Dakota Supreme Court has yet to address whether a legal malpractice claim is assignable, it has prohibited the assignment of personal injury claims. A. Unruh Chiropractic Clinic v. De Smet Ins. Co. of S.D., 782 N.W.2d 367, 370 (S.D. 2010) (reasoning that if personal injury claims were assignable, it "would disturb the peace of society, lead to corrupt practices, and prevent the remedial process of law"). Because the assignment of a legal malpractice claim has the effect of transferring control of the claim, it would implicate the concerns noted by the South Dakota Supreme Court in Unruh and Chem-Age. As such, we predict South Dakota, like other state courts within the Eighth Circuit, would prohibit the assignment of legal malpractice claims. See Gray v. Oliver, 943 N.W.2d 617, 623 (Iowa 2020) (identifying eight reasons for prohibiting the involuntary assignment of legal malpractice claims); Freeman v. Basso, 128 S.W.3d 138, 141 (Mo. Ct. App. 2004) (stating that "[l]egal malpractice claims are not now and have never been assignable in Missouri"); Earth Sci. Labs, Inc. v. Adkins & Wondra, P.C., 523 N.W.2d 254, 801 (Neb. 1994) (prohibiting the assignment of legal malpractice claims because of public policy considerations concerning the personal nature and confidentiality of the attorney-client relationship); Wagener v. McDonald, 509 N.W.2d 188, 190 (Minn. Ct. App. 1993) (determining the assignment of legal malpractice claims is against Minnesota's public policy).

Thompson's reliance on Kobbeman v. Oleson, 574 N.W.2d 633 (S.D. 1998), is misplaced because the relationship between an insurance agent and insured is not rooted in the level of confidentiality and trust present in the attorney-client relationship. Given South Dakota's express comments about the sanctity of the

attorney-client relationship and the parameters that must be met before invading that relationship, we can find no support for Thompson's invitation to adopt a case-by-case approach related to the assignment of legal malpractice claims.

Thompson also asserts the district court erred when it dismissed her fraud and deceit claims against the law firm. To the extent Thompson intended to state a claim for fraud or deceit claim, no such claim actually appears in the amended complaint—especially in light of South Dakota's requirement that fraud and deceit be pled with particularity. See Sisney v. Best Inc., 754 N.W.2d 804, 812 (S.D. 2008); S.D. Codified Laws §§ 15-6-9(b), 20-10-1. While the original complaint contained an allegation of fraud and deceit, the failure to retain that allegation in the amended complaint is dispositive. See Thomas v. United Steelworkers Local 1938, 743 F.3d 1134, 1139 (8th Cir. 2014) ("When a plaintiff files an amended complaint, the original complaint is superseded and has no legal effect."). The only remaining allegations pertain to punitive damages, but an assertion of punitive damages is not a free-standing cause of action under South Dakota law. See Olson-Roti v. Kilcoin, 653 N.W.2d 254, 259 (S.D. 2002) (explaining that punitive damages are allowed only when supported by a cause of action). The district court did not err in dismissing Thompson's claims.

## III. CONCLUSION

We affirm the judgment of the district court.

_____