# United States Court of Appeals
### For the Eighth Circuit

_____

No. 22-2496
_____

Steven Scaglione

*Plaintiff - Appellant*

v.

Acceptance Indemnity Insurance Company

*Defendant - Appellee*

_____

No. 22-2497
_____

Sominkcole Conner

*Plaintiff - Appellant*

v.

Steven Scaglione; Acceptance Indemnity Insurance Company

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: April 13, 2023
Filed: August 1, 2023

_____

Before LOKEN, SHEPHERD, and KELLY, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

Following a shooting at a bar in downtown St. Louis, Missouri, Sominkcole Conner, who was injured as a bystander, obtained a $2.5 million judgment against the bar's owner and operator, Steven Scaglione. Conner thereafter filed this equitable-garnishment claim against Scaglione and his insurer, Acceptance Indemnity Insurance Company (Acceptance). Scaglione filed cross claims against Acceptance, alleging that it had, in bad faith, failed to defend or indemnify him and breached its fiduciary duty. Acceptance filed motions to dismiss both Conner's and Scaglione's claims, which the district court[1] granted based on the applicability of an assault-and-battery exclusion in Scaglione's policy. In this consolidated appeal, both Conner and Scaglione assert that the district court erred in dismissing their claims. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

In the early morning hours of June 16, 2019, Conner, who was a patron at Voce Bar in downtown St. Louis, was struck by a stray bullet when a dispute broke out between two other bar patrons. Conner suffered serious injuries in the shooting and thereafter filed an action in Missouri state court against Scaglione alleging claims of premises liability, negligence, and negligent performance of an undertaking to render services. In this action, Conner alleged that Voce Bar was known to have patrons, especially in the early morning hours, armed with knives and firearms, and that Voce Bar employed inadequate security measures to protect its patrons and did not follow its own policy to frisk patrons entering the bar.

---

[1]The Honorable Shirley Mensah, United States Magistrate Judge for the Eastern District of Missouri, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

At the time of the shooting incident, Scaglione had a commercial general liability insurance policy with Acceptance, which provided coverage for bodily injury or property damage occurring on the premises of Voce Bar. Specifically, as relevant to this appeal, the policy provides:

> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.
>
> . . . .
>
> **b.** This insurance applies to "bodily injury" and "property damage" only if:
>
> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; [and]
> (2) The "bodily injury" or "property damage" occurs during the policy period . . . .

R. Doc. 1-2, at 28. The policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time" and defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." R. Doc. 1-2, at 39, 41. Finally, the policy contains an exclusion for "Assault and/or Battery," which states:

> This Insurance does not apply to:
>
> **A.** Any claims arising out of Assault and/or Battery, including actual or alleged Sexual Assault and/or Sexual Battery; or

-3-

**B.** Any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of you, your employees or volunteers, patrons or any other persons; or

**C.** Claims, accusations or charges of negligent hiring, placement, training or supervision arising from any of the foregoing are not covered.

We shall have no obligation to defend you, or any other insured, for any such loss, claim or suit.

R. Doc. 1-2, at 10.

Acceptance did not defend or indemnify Scaglione in the state court action. Ultimately, Conner and Scaglione agreed to arbitration, and Scaglione provided Acceptance with written notice of the arbitration agreement. Conner and Scaglione proceeded with arbitration, the arbitrator ultimately entered an award in Conner's favor in the amount of $2.5 million, and the Circuit Court of the City of St. Louis entered a judgment confirming this award. Conner thereafter filed this equitable-garnishment action against Scaglione and Acceptance, seeking satisfaction of the judgment. Acceptance removed this action to federal court, after which Scaglione filed a cross claim alleging bad faith refusal to defend, bad faith refusal to settle, and breach of fiduciary duty.

Acceptance then filed separate motions to dismiss both Conner's and Scaglione's claims, asserting that the assault-and-battery exclusion in the policy barred coverage. The district court granted both motions. As to Acceptance's motion to dismiss Conner's equitable-garnishment claim, the district court agreed with Acceptance that Conner could not state a claim for equitable garnishment because the assault-and-battery exclusion excluded coverage. According to the district court, Conner's allegations relating to the shooting—that two patrons engaged in a physical altercation, one drew a firearm from his waistband and aimed at the second patron, fired shots, and struck the second patron with three bullets

-4-

while also striking two bystanders, one of whom was Conner—plainly encompassed the definition of assault or battery, and Conner's injury plainly arose out of that assault and battery. The district court rejected Conner's argument that the assault-and-battery exclusion did not apply to innocent bystanders, but only to intended victims because no language in the policy, nor common dictionary definitions of the policy's undefined terms, supported this reading.

The district court similarly rejected Conner's argument that Scaglione's negligence, not the assault and battery, was the cause of her injuries, so the concurrent-proximate-cause rule—which provides that insurance policies should be construed to provide coverage where an injury was proximately caused by two events, even if one event was an excluded cause—applied. The district court first determined that the Missouri Supreme Court would be most likely to follow the approach that found this rule inapplicable, based on its review of relevant intermediate court case law requiring a source of an injury to be completely independent and distinct from the otherwise excluded-from-coverage cause. Then, applying this approach to Conner's allegations in her complaint, the district court determined that because Conner would not have suffered any injury from Scaglione's negligence but for the assault and battery, the rule did not apply. Because the rule did not apply, the assault-and-battery exclusion barred coverage. Without coverage, the district court determined that Conner could not state a claim for equitable garnishment. As to Acceptance's motion to dismiss Scaglione's cross claims, the district court determined that, because it had concluded in its prior order regarding Conner's claim that the policy did not provide Scaglione coverage, Scaglione could not state a claim for bad faith refusal to defend, bad faith refusal to settle, or a breach of a fiduciary duty. Conner and Scaglione both appeal.

II.

Conner and Scaglione assert that the district court erred in dismissing each of their claims. Conner argues that the district court erred because (1) the assault-and-battery exclusion, which must be construed narrowly, does not specify

that it may apply where the perpetrator was a third party unrelated to the insured and the victim was a bystander and (2) the concurrent-proximate-cause rule applies because Conner's injury arose from Scaglione's negligence, which did not depend on the assault and battery. Scaglione similarly argues that the district court erred (1) by failing to apply the concurrent-proximate-cause rule and (2) by applying subsection A of the assault-and-battery exclusion when the victim was an innocent bystander and a third party committed the assault. Scaglione also asserts that subsections B and C of the exclusion do not apply because the insured's negligence was not committed in response to the assault and battery but, rather, preceded it and because Conner's claims of negligence do not stem from hiring, training, or supervision. "We review *de novo* the district court's decision granting a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), accepting as true all factual allegations and viewing them in the light most favorable to the nonmoving party." Thompson v. Harrie, 59 F.4th 923, 926 (8th Cir. 2023). When, as here, we sit in diversity, a "district court's interpretation of state law is reviewed *de novo*," and "[w]here . . . a state supreme court has not yet spoken on an issue 'we must attempt to predict what that court would decide if it were to address the issue.'" Id. (citation omitted). In carrying out this task we rely on "relevant precedent, analogous decisions, considered dicta, and any other reliable data." Id.

While Conner and Scaglione appeal the dismissal of different claims under Missouri law, both parties' claims depend upon the question of whether the policy provides coverage for Conner's claims against Scaglione. See Adams v. Certain Underwriters at Lloyd's of London, 589 S.W.3d 15, 26 (Mo. Ct. App. 2019) ("A liability insurer has 'two distinct duties, the duty to indemnify the insured for covered losses, and the duty to defend the insured in any lawsuit seeking damages that would be covered losses.'" (citation omitted)); Kretsinger Real Est. Co. v. Amerisure Ins. Co., 498 S.W.3d 506, 510-11 (Mo. Ct. App. 2016) (stating that "to establish an equitable garnishment claim," one element a judgment creditor must satisfy is showing "that [the insurer's] policies covered the damages awarded in the

Underlying Judgment against [the insured]"). This question is thus dispositive to both appeals.[2]

Under Missouri law, "[t]he interpretation of an insurance policy is a question of law," and where "the policy language is unambiguous, 'the contract will be enforced as written.'" United Fire & Cas. Co. v. Titan Contractors Serv., Inc., 751 F.3d 880, 883 (8th Cir. 2014) (citation omitted) (applying Missouri law). We will find an ambiguity only "when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy[, and l]anguage is ambiguous if it is reasonably

---

[2]As we noted, the duty to indemnify and the duty to defend are two distinct duties, and "[t]he duty to defend arises when the insured is first sued and thus is understandably broader than the duty to indemnify." Esicorp, Inc. v. Liberty Mut. Ins. Co., 193 F.3d 966, 969 (8th Cir. 1999) (applying Missouri law). "An insurer may have a duty to defend claims falling within the policy even if it may not ultimately be obligated to indemnify the insured." Arch Ins. Co. v. Sunset Fin. Servs., Inc., 475 S.W.3d 730, 733 (Mo. Ct. App. 2015) (citation omitted). "The duty to defend is normally determined by comparing the policy language with the allegations in the complaint. But the insurer may not ignore 'actual facts,' that is, 'facts which were known, or should have been reasonably apparent at the commencement of the suit.'" Esicorp, 193 F.3d at 969 (citation omitted). In contrast, "[t]he duty to indemnify is determined by the facts as they are established at trial or as they are finally determined by some other means, for example through summary judgment or settlement." McCormack Baron Mgmt. Servs., Inc. v. Am. Guarantee & Liab. Ins. Co., 989 S.W.2d 168, 173 (Mo. 1999) (en banc). Thus, whether an insurance company breached a duty to indemnify or a duty to defend involves separate analyses. However, here, Scaglione argues only that the duty to defend "extends to claims which allege a concurrent proximate cause of an injury the policy covers, even though claims beyond coverage may also be present." Appellant Br. 29. Thus, by his own doing, Scaglione's claim involving the duty to defend is inextricably intertwined with his argument regarding the duty to indemnify—that the loss is covered by the policy because the concurrent proximate cause rule applies. Any argument regarding the broader duty to defend was not separately preserved and argued on appeal. See Lopez v. Tyson Foods, Inc., 690 F.3d 869, 875 (8th Cir. 2012) ("This court is unable to address . . . arguments . . . not preserve[d] . . . for appeal."). Accordingly, we consider the coverage question as dispositive of all of Scaglione's claims.

open to different constructions." Id. at 883-84 (citaton omitted). And "Missouri courts 'appl[y] the meaning [that] would be attached [to the policy] by an ordinary person of average understanding if purchasing insurance.'" Id. at 884 (alterations in original) (citation omitted). Further, "[i]nsurance companies are not required to indemnify the insured for injuries that are excluded by a policy[, but] [t]he burden of showing that an exclusion to coverage applies is on the insurer." Great Lakes Ins. SE v. Andrews, 33 F.4th 1005, 1008 (8th Cir. 2022) (citations omitted).

The parties first dispute whether the terms of the assault-and-battery exclusion limits the exclusion to an assault or battery committed by the insured or the insured's employees, with Conner arguing the exclusion contains such a limitation. Considering the terms of the exclusion and giving the words their ordinary meaning, we conclude that the exclusion is unambiguous and that no such limitation exists. The policy language plainly states in subsection A of the exclusion that "[a]ny claims arising out of Assault and/or Battery" are excluded from coverage, and subsection A contains no words suggesting a limitation regarding the perpetrator of the assault or battery. R. Doc. 1-2, at 10 (emphasis added). "The word 'any' when '[r]ead naturally . . . has an expansive meaning.'" In re SRC Holding Corp., 545 F.3d 661, 668 (8th Cir. 2008) (alterations in original) (quoting United States v. Gonzales, 520 U.S. 1, 5 (1997)). Given the expansive meaning of the term "any" and the lack of other limiting language, we disagree with Conner that the exclusion applies only where the assault or battery was committed by the insured or the insured's employees. Further, Conner's argument is almost entirely premised on other cases where insurance companies have drafted insurance policies with language that more specifically includes assaults or batteries committed by third parties in the exclusion. See Appellant Br. 54-56 (citing Great Lakes, 33 F.4th at 1007-08). However, "[a] court is not permitted to create an ambiguity in order to distort the language of an unambiguous policy, or, in order to enforce a particular construction which it might feel is more appropriate." Taylor v. State Farm Mut. Ins. Co., 368 S.W.3d 174, 180 (Mo. Ct. App. 2012).

Next, Conner and Scaglione assert that the exclusion does not apply to claims from innocent bystanders injured by an assault and battery and applies only to claims of the intended victim of the assault and battery. Again, we disagree. Subsection A of the exclusion contains expansive language stating that "[a]ny claims *arising out of* Assault and/or Battery" are excluded from coverage. The exclusion does not contain any limiting language that would suggest that injuries to innocent bystanders do not fall within the ambit of this exclusion. Further, as the district court noted, Conner and Scaglione's argument is based primarily on Adams, which they assert holds that an assault-and-battery exclusion did not apply where the victim was not the intended target. However, this argument misreads Adams. There, the court actually determined that the underlying petition did not contain sufficient allegations that an assault or battery ever occurred, so the exclusion did not apply. Adams, 589 S.W.3d at 29. The court did not suggest that the assault-and-battery exclusion did not apply solely because the purported victim was not the target. Accordingly, we reject this argument and conclude that the unambiguous policy language covers claims of injuries sustained by innocent bystanders arising out of an assault and battery. We thus conclude that the policy exclusion applies.[3]

Finally, Conner and Scaglione assert that even if Conner's injuries fell within the assault-and-battery exclusion, Scaglione's negligence constitutes a separate, covered cause of Conner's injuries under the concurrent-proximate-cause rule. Under this rule, "an insurance policy will be construed to provide coverage where an injury was proximately caused by two events—even if one of these events was subject to an exclusion clause—if the differing allegations of causation are independent and distinct." Taylor v. Bar Plan Mut. Ins. Co., 457 S.W.3d 340, 347 (Mo. 2015) (en banc) (citation omitted). Missouri courts have explained that "[f]or the rule to apply, the injury must have resulted from a covered cause that is truly 'independent and distinct' from the excluded cause." Id. at 348 (citation omitted).

---

[3]Because we have concluded that the policy exclusion applies to bar coverage based on subsection A, we need not address Scaglione's additional argument that subsections B and C of the exclusion do not apply.

-9-

The parties offer competing views about the application of this rule, particularly the independent-and-distinct requirement. Conner and Scaglione argue in favor of a standard considering whether the essential elements of the purported concurrent proximate cause can be stated without pleading an essential element of the excluded cause. On the other hand, Acceptance argues for an approach that considers whether the injury would have occurred but for the excluded cause. However, this Court has already addressed these divergent approaches, stating:

> The independent-and-distinct requirement has not been interpreted consistently by Missouri courts. In some cases, courts have adopted a but-for approach, asking whether the injury would not have occurred but for the excluded cause. See, e.g., Hunt v. Capitol Indem. Corp., 26 S.W.3d 341, 345 (Mo. Ct. App. 2000) (holding that negligence was not independent and distinct because "[w]ithout the underlying assault and battery, there would have been no injury and therefore no basis for plaintiffs' action . . . for negligence"). In other cases, courts have taken an element-based approach, asking whether the elements of a covered cause, such as negligence, require pleading any element of an excluded cause, such as assault and battery. See, e.g., Intermed Ins. v. Hill, 367 S.W.3d 84, 88-89 (Mo. Ct. App. 2012) (holding that two causes were independent and distinct because "proof of negligent supervision does not require proof of an offensive touching," an element of battery).

Great Lakes, 33 F.4th at 1011 (alterations in original). This Court further noted that the Missouri Supreme Court has not adopted either approach, stating:

> In recognizing the concurrent-proximate-cause rule in Taylor, the Missouri Supreme Court did not expressly endorse either approach. Instead, it appeared to favor a narrow application of the doctrine, insisting that the covered cause be "wholly separate" from the excluded cause, that is, "truly" and "totally" independent and distinct from it. The court also signaled that the range of foreseeable harms is relevant to whether two causes are independent and distinct. If an injury is just one of many foreseeable harms that could have occurred because of the covered conduct, the excluded cause is incidental. Thus, for example,

-10-

the negligent hiring of a maniac might be independent and distinct from his act of arson, but not so for the negligent hiring of a pyromaniac.

Id. (citations omitted).

Following Great Lakes, and focusing on foreseeability, we conclude that Scaglione's negligence was not independent and distinct from the excluded assault and battery. Here, just as in Great Lakes, "the scope of foreseeable harms from [Scaglione's] negligence is narrow." See id. According to Conner's allegations in her underlying petition, Scaglione was aware that bar patrons were often armed with dangerous weapons in the late-night and early morning hours, and failed to provide adequate security measures, such as frisking, to prevent individuals from bringing firearms onto the premises. "The harms that foreseeably flow" from failing to prevent patrons from entering the bar with firearms "are few—they include assaults, batteries, physical altercations, and not much more." See id. Therefore, it was not "only incidental" that Scaglione's negligence resulted in an assault and battery; rather, Conner's injuries were one of a narrow range of foreseeable harms stemming from Scaglione's negligence. The concurrent-proximate-cause rule thus does not apply, and, therefore, the exclusion bars coverage under the policy. Without coverage, Conner and Scaglione cannot state a claim. The district court thus did not err in granting the motions to dismiss.

III.

For the foregoing reasons, we affirm the judgment of the district court.

_____